424 A.2d 1284

**COMMONWEALTH of Pennsylvania,**

v.

**Samuel C. CONTAKOS, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 26, 1980.

Decided Feb. 4, 1981.

Dennis J. Clark, Pittsburgh, for appellant.

Gerald R. Solomon, Dist. Atty., Samuel Davis, Asst. Dist. Atty., Uniontown, for appellee.

Before O'BRIEN, C. J., ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

O'BRIEN, Chief Justice.

Appellant, Samuel C. Contakos, was convicted by a jury of murder of the first degree and criminal conspiracy. Post-verdict motions were denied and appellant was sentenced to life imprisonment for the murder conviction and a consecutive prison term of five-to-ten years for the conspiracy conviction. This direct appeal followed. We vacate judg-

ment of sentence and remand the case to the trial court for proceedings consistent with this Opinion.

The facts are as follows. The principal Commonwealth witness at trial was Thomas Harry Colvin, who had previously pled guilty to killing the victim in the instant case, Charles Jacob Lowry. Colvin testified that he and appellant had agreed with two other individuals to kill Lowry for $1,500 each. Colvin stated that he and appellant had, on October 3, 1977, traveled to Johnstown but were unable to find Lowry. They made the same trip three days later and upon locating the victim, the pair shot and killed him. Colvin testified that he had used a .25 caliber gun while appellant had used a .357 magnum. While there were no other eyewitnesses to the shooting, various other witnesses were able to place appellant and Colvin in the area on both October 3 and October 6. The Commonwealth also presented medical testimony that the victim had been shot nine times. Seven of the wounds had been caused by .25 caliber bullets while the other two wounds were caused by bullets of an undeterminable origin.

Two of appellant's claims, if meritorious, would entitle him to a discharge.[1] He first argues that the evidence presented at trial was insufficient to sustain either of his convictions. As we have oft stated:

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt ... Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced ... The factfinder is free to believe all, part or none of the evidence." *Commonwealth v.*

1. Appellant's other claims, if successful, would only entitle him to a new trial. We therefore address his assertions that the evidence was insufficient to sustain his convictions and that the court lacked jurisdiction in this case and the charges should have been dismissed.

*Rose,* 463 Pa. 264, 276–68, 344 A.2d 824, 825–26 (1975) (Citations omitted).

In the instant case, the testimony of Colvin alone is sufficient to establish all of the elements of both murder of the first degree and criminal conspiracy.

Appellant's second assertion that would entitle him to a discharge is that the trial court did not have jurisdiction in the case and the charges should have been dismissed because neither of the informations had been personally signed by the district attorney. Both informations were rubber stamped with the district attorney's signature. Each, however, is also marked "Approved 12–20–78 R.C.W." The Commonwealth asserts that "R.C.W." is Assistant District Attorney Ralph C. Warman.

The Judicial Code provides:

"(d) Duties of prosecuting attorneys.—Whenever a transcript of proceedings, complaint and all related papers in a criminal proceeding where the defendant has been held for court have been transmitted to the clerk of court or the officer designated by the court, such officer, after recording the same, shall immediately transmit the documents or a copy thereof to the district attorney. The district attorney or his designee shall have the duty to inquire into and make full examination of all the facts and circumstances connected with each such case to determine if the facts and circumstances warrant the filing of an information or informations premised upon the transcript. No information shall be filed by the district attorney concerning alleged criminal violations where a preliminary hearing has not been held or properly waived except as prescribed by general rules.

"(e) Disposition of cases.—The district attorney shall sign all informations. The information shall be filed in the form prescribed by general rules.

\*     \*     \*     \*     \*     \*

"(i) Definition.—As used in this section 'district attorney' includes a special attorney appointed by the Attorney General in the manner provided by statute, an acting

district attorney and any assistant district attorney whose authority to act for the district attorney under this section is evidenced by a written designation executed by the district attorney or acting district attorney and filed with the clerk of the courts." Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 8931.

Furthermore, our rules provide:

"The information shall be signed by the attorney for the Commonwealth . . . ." Pa.R.Crim.P. 225(b).

In *Commonwealth v. Belcher,* 258 Pa.Super. 153, 392 A.2d 730 (1978), the court was presented with a question concerning informations which contained no signature whatsoever. The court held that an unsigned information was void *ab initio* as opposed to merely voidable, and stated:

"A bill of indictment presented by a grand jury has indicia of reliability not bound in a bill of information. The grand jury has made an independent determination of the sufficiency of the evidence which need merely be ratified by the district attorney. In the case of a bill of information, however, it is the prosecutor alone who must decide whether to bring the defendant to trial. When the vehicle for initiating a criminal list (i. e., the information) is unsigned, it is not at all apparent that a reasoned evaluation of the advisability of instituting a criminal trial has been made. The signature on the information is, therefore, a vital ingredient which guarantees the authenticity and reliability of the document. The requirement of Rule 225(b) that the information be signed by the attorney for the Commonwealth must, as a result, be deemed mandatory rather than merely directory." *Id.* 258 Pa. Super. at 156, 392 A.2d at 731.

We believe that the approval and initialing of the information by an assistant district attorney, along with the stamped signature of the district attorney, complies with our rules, the Judicial Code and the concerns enunciated in *Belcher,* as Warman had been designated to act in the district attorney's stead in the manner called for in the Judicial Code. Appellant's argument is thus without merit.

Appellant next argues that the trial court erred in refusing his repeated requests for production and disclosure by the Commonwealth of any statements, reports, notes or written records concerning interviews of Commonwealth witnesses who subsequently testified at trial. The Commonwealth does not deny the existence of that which is sought by appellant; rather, the Commonwealth argues that appellant is not entitled to what they classify as "investigatory notes and incomplete summaries" of the interviews.

In *Commonwealth v. Wade*, 480 Pa. 160, 169, 389 A.2d 560, 564 (1978) (plurality opinion), we stated:

"In the past we have required production only of those pre-trial statements which are verbatim notes of a witness' statements. [footnote omitted] See *Commonwealth v. Morris*, 444 Pa. 364, 281 A.2d 851 (1971). We have declined to extend this rule to a situation . . . which involves the notes of the [individual taking the statement], subject as they are to that [person's] 'selection, interpretation and recollection.' *Commonwealth v. Cain*, 471 Pa. 140, 154, 369 A.2d 1234, 1241 (1977) (opinion in support of affirmance). See also *Commonwealth v. Collins*, 440 Pa. 368, 269 A.2d 882 (1970)."

We believe that the above-quoted standard of *Wade* requires a minor clarification concerning precisely what must be disclosed following the Commonwealth witness' testimony on direct examination.

As we stated in *Commonwealth v. Grayson*, 466 Pa. 427, 429, 353 A.2d 428, 429 (1976), when discussing the reasons why such statements must be disclosed:

"The defense was entitled to examine the statement of the witnesses in order to have a fair opportunity to cross-examine the witnesses. Whether the statements of the prosecution's witnesses would have been helpful to the defense is not a question to be determined by the prosecution or by the trial court. They would not be reading the statements with the eyes of a trial advocate engaged in defending a client. Matters contained in a witness's statement may appear innocuous to some, but have great

significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness."

While a defendant may be seeking only notes of interviews with a Commonwealth witness, those portions of the notes which contain either verbatim, or substantially verbatim, statements which are relevant to the matter being tried should be available to the defendant for the reasons enunciated in *Grayson.*

We thus believe a defendant is entitled to review any notes, reports or written records relating to interviews with witnesses who subsequently testify at trial. Recognizing that questions will arise concerning which portions of the notes are, in fact, either verbatim or substantially verbatim factual accounts, we feel a hearing, outside the jury's presence, could initially resolve those disputes. The transcript from such a hearing would provide an adequate record for meaningful appellate review. As we stated in *Commonwealth v. Hamm,* 474 Pa. 487, 499, 378 A.2d 1219, 1225 (1977):

> "We recognize that the trial court has the ultimate responsibility to determine whether the prior statements may be used in cross examination of the witness or are otherwise admissible. However, like other evidentiary rulings, these determinations are properly made in an adversary context. We do not believe that the trial court can determine the value that prior statements may have to the defense without hearing defense argument after inspection."

In the instant case, appellant never had an opportunity to review the notes and present argument to show which notes contained statements which could have been used by appellant. Thus we remand the case to the trial court. After appellant reviews the notes in question, the hearing court should determine if the Commonwealth's failure to produce the notes was harmless error. If the Commonwealth fails to establish beyond a reasonable doubt that the error was harmless, the court should grant appellant a

new trial. *Commonwealth v. Hamm, supra,* citing, *Commonwealth v. Davis,* 455 Pa. 466, 317 A.2d 218 (1974). If the court determines the error was harmless, it should reinstate the judgment of sentence. Following the court's ruling, a new appeal to this Court may be taken.[2]

Judgment of sentence is vacated and the case is remanded to the trial court for proceedings consistent with this opinion.

LARSEN, J., files a concurring opinion in which KAUFFMAN, J., joins.

ROBERTS, J., files a dissenting opinion.

ROBERTS, Justice, dissenting.

Appellant must be granted a new trial on the charges of criminal conspiracy and criminal homicide, because in the course of appellant's jury trial on both charges, the trial court committed reversible error by clearing the courtroom of all members of the public except for media representatives. Thus, I dissent.

On Monday, March 5, 1979, the court and counsel discussed preliminary matters before commencement of jury selection. After review of proposed questions for voir dire, both defense counsel and the prosecuting attorney addressed their respective concerns regarding trial scheduling. The prosecuting attorney informed the Court:

"The only problem I would have, your Honor, is because of security reasons, the Commonwealth's chief witness, Thomas Colvin, is not in this county. The problem I would have is, and I want the court to know about it, in the event that when a jury is finally selected, if Mr. Colvin is the first witness, I may need about an hour or an hour and a half to get the witness here."

2. We need not address appellant's remaining allegations of error because of our disposition of this appeal. "These claims may be raised again if an appeal is taken from the trial court's ruling on remand." *Commonwealth v. Hamm, supra,* 474 Pa. at 502, n.13, 378 A.2d at 1227, n.13.

Jury selection was not completed until Wednesday morning, March 7, and the case was not ready for trial until that afternoon. The Commonwealth chose not to present Colvin until the following day.

Despite the "security" problems regarding Colvin, there is nothing on the record to indicate that the court called for any precautions regarding spectators at trial. Indeed, the record indicates that, on Thursday morning, March 8, the second day of testimony, there were as many as fifty persons observing trial, including members of a high school class and at least thirty prospective jurors not yet assigned to a trial.

That Thursday morning, before chief Commonwealth witness Colvin testified, the prosecuting attorney informed the court that he was "quite sure [Colvin] will be on the stand for quite a length of time . . ." and suggested that, "we let the jury recess. . . ." Record at 196a. The court agreed to a recess.

During the recess suggested by the prosecuting attorney, the court, in chambers, put the following on the record:

"I have been informed by the Commanding Officer of the Pennsylvania State Police that they have information that there is going to be an attempt on the life of the next witness [(Colvin)], and it has come from three different sources, and I was informed of this at recess."

Rather than considering less prejudicial alternatives, the court, over defense objection, ordered the courtroom cleared of "all spectators with the exception of a couple members of the newspaper and radio . . ." and resumed trial immediately, one-half hour after the recess had begun. With only media representatives present, and the public excluded, Colvin testified to his own involvement in the alleged homicide as well as to the involvement of appellant.

Colvin's testimony covered the remainder of that Thursday. The next day, Friday, eight additional Commonwealth witnesses testified. After a weekend recess, the defense presented its testimony on Monday, March 12, and Tuesday the 13th. On these three days, so far as the record indicates,

no limitations on public access were imposed. Late Tuesday afternoon, the jury returned verdicts of guilty of murder of the first degree and conspiracy.

The prejudicial impact upon the jury of the court's order clearing the courtroom of all spectators during the presentation of the Commonwealth's chief witness must be obvious. Surely, the abrupt exclusion of members of the public when the most damaging testimony against the accused is presented would set the stage for a wide range of speculation by the jury, including the possibility that the witness's safety is in jeopardy. The court's exclusion of the public from this jury trial, the attending circumstances, and the range of speculation all would inevitably cause the jury to focus upon the defense and prejudice appellant's cause.

Such courtroom-closing affects more than the jury. It denies appellant his constitutional right to a public trial, and adversely impairs the integrity of the truth-seeking process. As Mr. Chief Justice Burger observed in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980),

> "the historical evidence demonstrates conclusively that at the time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open. This is no quirk of history; rather, it has long been recognized as an indispensible attribute of an Anglo-American trial. Both Hale in the 17th Century and Blackstone in the 18th saw the importance of openness to the proper functioning of a trial; it gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality."

448 U.S. at 569, 100 S.Ct. at 2823 (Opinion Announcing Judgment of Court). Mr. Justice Brennan, quoting Blackstone, also wrote: " 'open examination of witnesses *viva voce,* in the presence of all mankind, is much more conducive to the clearing up of truth . . . .' " Id., 448 U.S. at 584–585, 100 S.Ct. at 2830. See also *United States ex rel. Bennett v. Rundle,* 419 F.2d 599 (3d Cir. 1969) (*Jackson v. Denno*

hearing, conducted after jury empanelment, may not be closed to public over defense objection).

Here, where the chief Commonwealth witness testified before only a few media representatives in the non-public portion of a trial otherwise fully open, it must be concluded that the trial court's order closing the courtroom was prejudicial and that a new trial should be granted.*

LARSEN, Justice, concurring.

As to the majority's disposition of appellant's claim that the Commonwealth failed to provide him with statements and reports concerning police interviews of Commonwealth witnesses who testified at trial, I agree that the case should be remanded to the trial court for an evidentiary hearing. I do not, however, agree with the reasoning advanced by the majority in support of that result.

The Commonwealth has a duty to provide the defense with the prosecution's records of verbatim or substantially verbatim pre-trial statements of witnesses who testify at trial. *Commonwealth v. Wade*, 480 Pa. 160, 389 A.2d 560 (1978). The majority, in what it terms a "minor clarification" of this rule, states that the prosecution must now produce for defense counsel "any notes, reports, or written records *relating to interviews with witnesses* ..." majority opinion at 1288 (emphasis supplied). This is not a minor clarification, but a major revision of the duties previously imposed upon the prosecution in *Commonwealth v. Wade, supra.* And, this sweeping language will permit review of the entire file, including the investigator's or policemen's

---

* I agree with the majority that the evidence is sufficient to support the verdicts. The testimony of chief Commonwealth witness Colvin, who testified while the court's prejudicial order was in effect, directly linked appellant to a plan to kill the victim as well as to the killing itself. As to appellant's claim that he must be discharged because of a "jurisdictional" defect in the information, the majority also correctly denies relief. I do not, however, share the majority's apparent belief that a defective signature of a district attorney or authorized staff member would provide a basis for relief. At the same time, I would not condone the "rubber stamp" process employed here by the district attorney's office.

impressions and opinions and the prosecutor's strategy, since all of these matters could be derived from the pre-trial investigative interviews and thus may be considered as "relating to" those interviews. Such a vast intrusion into the state's files is unwarranted, and I would follow and adhere to the standards set forth in *Wade*.

In the instant case, the Commonwealth has provided this Court with the police reports in question, and it is evident that they contain verbatim and substantially verbatim statements. I therefore agree that the case must be remanded to the trial court for a hearing on whether the Commonwealth's failure to make these reports available to appellant's counsel was harmless error.

KAUFFMAN, J., joins this concurring opinion.