434 A.2d 1185
**COMMONWEALTH of Pennsylvania**
v.
**James McCLENDON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 13, 1980.
Decided Sept. 24, 1981.

468

Joshua M. Briskin, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

OPINION OF THE COURT

NIX, Justice.*

We are called upon to assess whether the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1976) have been met in the instant matter. Specifically, we must consider counsel's request to withdraw and determine what, if any, rights appellant may have as to further representation.

On May 19, 1975, James McClendon, appellant herein, was convicted by a jury of murder of the second degree, arson and related offenses. On direct appeal we reversed the murder conviction and granted appellant a new trial. In all other aspects, the order imposing sentence was affirmed. *Commonwealth v. McClendon*, 478 Pa. 108, 385 A.2d 1337 (1978). Appellant was retried on August 30, 1978 on an information charging murder and voluntary manslaughter. The jury returned a verdict of voluntary manslaughter and a sentence of three (3) to ten (10) years was imposed.[1] A notice of appeal was filed in this Court on November 9, 1978. Thereafter, a copy of a brief was filed by counsel for appellant along with counsel's petition for leave to withdraw. A copy of the brief was also served upon appellant with notice of the right of appellant to either retain new counsel and/or to submit a supplemental brief. In response appellant has filed a letter objecting to counsel's petition to withdraw and filed a *pro se* memorandum of law in which he advances an illegality of sentence argument.

In *Anders* the United States Supreme Court addressed the quality of representation to which an indigent criminal defendant was entitled in an appeal of right. The Court was concerned that the quality of representation should not be undermined because of his impecunious state.

* This case was assigned to the writer on February 3, 1981.

1. The 3–10 year sentence imposed under the manslaughter conviction was directed to be served consecutively to a 10–20 year sentence that had previously been imposed for the arson conviction.

> [T]his Court has consistently held invalid those procedures 'where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself.' [Citation omitted.]

*Id.* at 741, 87 S.Ct. at 1398.

█ That Court concluded that equality of representation could only be assured "where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.*" *Id.* at 744, 87 S.Ct. at 1400. In *Commonwealth v. Baker*, 429 Pa. 209, 239 A.2d 201 (1968) we noted that *Anders* offered counsel two choices when representing an indigent client on appeal. He can either prosecute the appeal, in which case he will be expected to perform as a spirited advocate on his client's behalf, or counsel may choose to withdraw his services. Where the latter alternative is selected *Anders* requires the following procedure:

> Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Id.* 386 U.S. at 744, 87 S.Ct. at 1400.

From the foregoing, it is apparent that the right to withdraw is in the first instance tied to a finding, after a conscientious review of the record, that the appeal is "wholly frivolous." This Court has also noted "that lack of merit in an appeal is not the legal equivalent of frivolity." *Commonwealth v. Greer*, 455 Pa. 106, 108, 314 A.2d 513, 514 (1974).

> *Anders* 'appears to rest narrowly on the distinction between complete frivolity and absence of merit. The latter is not enough to support either a request by counsel to withdraw, nor the granting of such a request by the court.'
>
> *Commonwealth v. Greer, supra*, 455 Pa. at 108–9, 314 A.2d at 514.

Here counsel in his brief reached the conclusion that the appeal was wholly frivolous and based upon that judgment seeks leave to withdraw.

> After carefully and conscientiously examining the entire record, counsel has determined that the appeal of this case is wholly frivolous. This determination is made with full recognition of the importance of a guarantee of representation to indigence [sic] and of the constitutionally-mandated procedure for withdrawal of counsel.
>
> Appellant's brief, pg. 7.

Counsel has also met the requirements of notifying the indigent of his request to withdraw, furnished the indigent with a copy of the brief prepared by counsel and advised the indigent of his right to retain new counsel or raise any points that he may deem worthy of consideration. At that point it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous. *Anders v. California, supra*. We have discharged that responsibility and concur in counsel's judgment that the appeal is wholly frivolous.

■ The only remaining question left to be considered before ruling upon counsel's motion to withdraw is whether the brief prepared by counsel satisfies the mandate of *An-*

ders.  *Anders* requires that counsel's brief should refer to "anything in the record that might arguably support the appeal."  *Anders v. California, supra* 386 U.S. at 744, 87 S.Ct. at 1400.  The question of the sufficiency of counsel's brief has been a subject of concern in this jurisdiction.  *See e.g. Commonwealth v. Collier,* 489 Pa. 29, 413 A.2d 681 (1980);  *Commonwealth v. Perry,* 464 Pa. 272, 346 A.2d 554 (1975).

> . . . By the same token, counsel is not required to compromise principle or to act contrary to his own conscience. Hence, if after a conscientious study of the case he concludes an appeal from the judgment imposed on his client is totally without merit and would be wholly frivolous, he should so advise the court and ask permission to withdraw as counsel in the case.  But before he may withdraw he must, inter alia, file a brief referring to anything in the record 'that might arguably support the appeal.'  *Commonwealth v. Baker, supra,* 429 Pa. at 214, 239 A.2d at 203.  It is in this respect that counsel here failed in his responsibility.
>
> In his brief, after a recitation of the facts and pertinent law, counsel in a conscientious effort to be honest with the court, then proceeded to demonstrate by reference to the record why the instant appeal is meritless.  This counsel may not do.  Just as counsel may not assume the role of *amicus curiae* when he represents a client, so too, when counsel seeks to withdraw, he may not assume that role when presenting to the court anything that might arguably support an appeal.  We repeat counsel's role is not that of *amicus curiae.*
>
> *Commonwealth v. Perry, supra,* 464 Pa. at 275–76, 346 A.2d 554.

The dilemma created by the *Perry* reasoning becomes apparent when we consider the definition of the term "wholly frivolous" adopted in this jurisdiction.  *Commonwealth v. Greer, supra.*  If the *Greer* definition of "wholly frivolous" means that there are no points present that "might arguably support an appeal" counsel is saddled with an impossible

burden, if he is nevertheless required to file a brief containing arguments that are nonexistent. If on the other hand, there are claims of arguable merit, even though counsel may not have any confidence in them, under *Greer* the appeal is not "wholly frivolous" and counsel is not entitled to seek leave to withdraw. *Commonwealth v. Greer, supra.* Thus following the *Perry* rationale to its logical conclusion the right of counsel to seek leave to withdraw would be illusory. We do not believe that such a result was ever intended by the United States Supreme Court.

■ The core of the *Anders'* reasoning is that where an accused is entitled to a counselled appellate review, that right should not be denied or diminished solely because of indigency. However, *Anders* does not require that counsel be forced to pursue a wholly frivolous appeal just because his client is indigent. The major thrust of *Anders* was to assure a careful assessment of any available claims that an indigent appellant might have. That end is achieved by requiring counsel to conduct an exhaustive examination of the record and by also placing the responsibility on the reviewing court to make an independent determination of the merit of the appeal. These requirements were clearly satisfied here. What does present the problem is that the counsel's brief would not appear to meet the standards set by *Commonwealth v. Collier, supra* and *Commonwealth v. Perry, supra.* These cases would seem to suggest that counsel's statements in the brief as to why the arguments were wholly lacking in merit evidenced counsel's failure to assume the role of an advocate. At the same time, counsel's right to withdraw is dependent upon his certification that he fully studied the record and found no merit in the appeal.

The fallacy in a strict adherence to the *Perry* rationale is obvious. Once we are satisfied with the accuracy of counsel's assessment of the appeal as being wholly frivolous, counsel has fully discharged his responsibility. The role of an advocate, insisted upon in *Anders,* refers to the manner in which the record was examined in an effort to uncover grounds to support the appeal. Where counsel has in good

faith satisfied that obligation and found the appeal to be wholly frivolous, he can do no more. We reject the view that his explanation of why there is no basis for an appeal should be interpreted as reflecting counsel's lack of concern in the client's cause. Nor can that fact be assigned as a reason for concluding that the client did not receive this constitutionally protected right of representation.

Having found from our independent study of the record, including a consideration of appellant's *pro se* memorandum of law, that the appeal was wholly frivolous, we grant counsel's request to withdraw. Because of our conclusion that the appeal is entirely without merit and there being no basis for the relief sought, we also affirm the judgment of sentence.

O'BRIEN, C. J., filed a dissenting opinion in which ROB-ERTS, J., joined.

ROBERTS, J., filed a dissenting opinion in which O'BRIEN, C. J., joined.

O'BRIEN, Chief Justice, dissenting.

The majority in the instant case disregards the constitutionally mandated procedure for withdrawal of counsel as set forth by the Supreme Court of the United States in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The majority claims that counsel herein has met the requirements of *Anders* because he requested to withdraw, filed a brief, furnished his client with a copy and advised him of his right to retain new counsel or proceed *in propria persona*. The majority states that it is then incumbent upon the court to review the record and make an independent judgment whether or not the appeal is indeed frivolous. Once that finding is made, "[t]he only remaining question left to be considered before ruling upon counsel's motion to withdraw is whether the brief prepared by counsel satisfies the mandate of *Anders*." at 1187.

Such a procedure completely ignores the spirit of *Anders*, which detailed what counsel is required to do *before* the

court makes an independent judgment regarding the merit (if any) of the appeal. An evaluation of the brief submitted purporting to comply with *Anders* must be made *before* the court undertakes an independent evaluation. If the brief filed is inadequate, the indigent has not received the diligent and effective representation which is required by *Anders.*

The majority is careful to point out that the *Anders* Court concluded that "equality of representation could only be assured 'where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.*'" at 1186, *citing, Anders, v. California, supra* 386 U.S. at 744, 87 S.Ct. at 1400. However, this requirement is completely ignored when the majority evaluates whether the brief prepared and submitted by counsel for appellant satisfies the imperative of *Anders.* The Court's action today amounts to merely paying lip service to the precept of quality legal representation for those without financial resources.

A common thread running through the *Anders* opinion is the Supreme Court's denunciation of counsel's representation in the role of *amicus curiae.* In Part I of the opinion, the Court described the precedent that provided the basis for the *Anders* decision and specifically reiterated that counsel's representation "must be in the role of an advocate, *Ellis v. United States,* 356 U.S. 674, 675, 78 S.Ct. 974, 975, 2 L.Ed.2d 1060 (1958), rather than as *amicus curiae." Anders v. California, supra* 386 U.S. at 741, 87 S.Ct. at 1399. In Part II of the opinion, when discussing the particular procedure that had been utilized in Mr. Anders' case, the Court rejected the procedure because counsel did not act "in any greater capacity than merely as *amicus curiae* which was condemned in *Ellis supra." Id.* 386 U.S. at 743, 87 S.Ct. at 1399. Finally, in Part III of the opinion, the Supreme Court began its directive to court-appointed counsel who wish to withdraw with the unequivocal declaration that "[t]he constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client as opposed to that of *amicus curiae." Id.* at 744, 87 S.Ct. at 1100.

The majority's conclusion that the role of an advocate insisted upon in *Anders* refers to the manner in which the record was examined is simply incorrect. If the *Anders* Court had been solely concerned with counsel's review of the record, there would have been no need to reject the "no merit letter" utilized by Mr. Anders' attorney, for the court could have verified counsel's conclusions by its own review of the record. Rather, the *Anders* Court was concerned with what counsel submitted to the court that might verify counsel's examination of the record and aid the Court in conducting its independent evaluation of the case. At the same time the Court in *Anders* expressed its concern that counsel not brief his case against his client.

The majority states that once counsel examines the record and finds the appeal to be frivolous "he can do no more." at 1188. Unfortunately, in this case, counsel did indeed "do more," in the form of argument *against* his client. Counsel should have limited his brief to a statement of the facts with citations to the transcript and discussion of the legal issues involved in the case with citations of authority.

Instead, counsel for appellant stated, "it is clear that the jury filed [sic] the evidence of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt." Counsel went on to describe how the evidence was sufficient to sustain the verdict, why the court did not abuse its discretion in sentencing and further cited precedent (albeit insufficiently) upon which this Court could base a finding that a due process claim lacked merit. In answering each point raised, counsel sought to show this Court why each would fail. Such representation does not constitute the assistance of counsel required by *Anders* and adopted by this Court in *Commonwealth v. Collier*, 489 Pa. 26, 413 A.2d 680 (1980) and *Commonwealth v. Perry*, 464 Pa. 272, 346 A.2d 554 (1975). The majority's notion that the brief filed on behalf of Mr. McClendon does not meet the standards set by *Collier* and *Perry* is only partially correct. In reality, the majority's objection is not to the standards set in *Collier* and *Perry*, but to those enunciated by the Supreme Court in *Anders*.

For more than thirteen years this Court has emphatically enforced and reiterated the *Anders* requirement of spirited advocacy by court-appointed counsel. Since *Commonwealth v. Baker*, 429 Pa. 209, 239 A.2d 201 (1968), we have deplored and rejected the submission of a brief purporting to comply with *Anders* which "effectively amounts to an argument in support of affirmance." *Commonwealth v. Greer*, 455 Pa. 106, 110, 314 A.2d 513, 515 (1974), *citing, Commonwealth v. Baker, supra.*[1]

As the brief submitted in the instant case fails to comply with *Anders v. California, supra,* I would remand the record to the trial court to appoint new counsel to represent appellant in a manner consistent with this appeal.

ROBERTS, J., joins in this dissenting opinion.

ROBERTS, Justice, dissenting.

I join in the dissenting opinion of Mr. Chief Justice O'Brien. As the United States Court of Appeals for the District of Columbia Circuit has stated,

> "[a]ppointed counsel is of course not required to accept a client's view by asserting points his good conscience would reject even at the loss of a handsome fee. At the same time, counsel cannot file a claim against his client. It is one thing for a prisoner to be told that appointed counsel sees no way to help him, and quite another for him to be sandbagged when the counsel appointed by one arm of Government seems to be helping another to seal his doom."

*Suggs v. United States*, 391 F.2d 971, 974 (D.C. Cir. 1968); accord, *Commonwealth v. Jones*, 451 Pa. 69, 301 A.2d 811 (1973).

I am compelled to write additionally because appellant's pro se "illegality of sentence" argument, summarily dismissed by appellant's appointed counsel and never specifically addressed by the opinion of Mr. Justice Nix, raises an

1. *See also, Commonwealth v. Collier, supra; Commonwealth v. Perry, supra.*

issue of arguable merit, one of which would have undoubtedly been argued vigorously to this Court if appellant's "counsel" had been privately retained.

Appellant was initially convicted of murder of the second degree, arson, and related charges. At that time he received a sentence of life imprisonment on the murder charge, and a concurrent sentence of 10 to 20 years on the arson charge. After this Court on appeal reversed the murder conviction and affirmed the arson conviction, appellant received a new trial on the charge of murder. At this second trial he was convicted of voluntary manslaughter, for which he received a sentence of 3 to 10 years' imprisonment, to be served *consecutively* to the sentence already imposed for arson.

Appellant contends that the imposition of a consecutive sentence in place of the concurrent sentences previously imposed constitutes an impermissible increase of sentence on retrial in violation of the due process requirements set forth in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In his brief against his client, appellant's appointed counsel makes this presentation of the sentencing claim:

"Nor can counsel in good faith argue that the Trial Court violated his [appellant's] protection against double jeopardy or failed to provide due process by imposing a harsher sentence on retrial. The defendant in *Breniser*, [sic] contended that his second sentence was more harsh in that the consecutive sentence rather than the concurrent sentence meeted [sic] out in his first trial increased the amount of punishment by delaying his eligibility for parole. The Supreme Court held defendant's claims without merit because, in fact, no delay in parole eligibility occurred.

"In *Breniser* [sic] as in the instant case, Appeallant's [sic] initial life imprisonment sentence precluded all parole, 61 P.S. § 331.21. It could not therefore be argued that the second sentence was more severe." [1]

1. Brief in Support of Withdrawal at 6.

The "Breniser" case, to which counsel nowhere provides a citation, is *Commonwealth v. Brenizer*, 477 Pa. 534, 384 A.2d 1218 (1978).

As appellant's pro se memorandum demonstrates, it can be argued—and argued non-frivolously—that appellant's second sentence did constitute an increase in punishment. Appellant contends that this Court in *Brenizer* failed to consider the fact that, although parole is not available to a prisoner serving a life sentence, the possibility of commutation of sentence to a term of years does exist. Pa. Const. art. IV § 9. Appellant contends that

"in the State of Pennsylvania a prisoner serving life may reasonably, in the event that the sentence is commuted, expect a commuted minimum sentence which would range from a little as 9 years to as much as 20 years, therefore it was possible that after 10 years appellant could have secured his release through commutation of the life sentence whereto [sic] he would have been released totally from prison as opposed to the present situation where he would be released to the next sentence." [2]

It is of course inappropriate to speculate at this point on whether appellant's argument would prevail in this Court. However, it should be noted that the possibility of commutation of a life sentence is a real one indeed. See "Time Served by Commuted Lifers 1971–1980," Dep't of Justice Bureau of Corrections, Planning & Research Division (Harrisburg, 1981). [3]

The same high quality of advocacy is required of a lawyer irrespective of whether he is acting as court-appointed or

2. Pro se memorandum of appellant at 2–3.

3. Judges imposing sentences in addition to a sentence of life imprisonment appear to take this possibility into account, for such additional sentences are often imposed to run consecutively, rather that concurrently, to the life sentence. See, e.g., *Commonwealth v. Floyd*, 494 Pa. 537, 431 A.2d 984 (1981); *Commonwealth v. Contakos*, 492 Pa. 465, 424 A.2d 1284 (1981); *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).

privately retained counsel. Indeed, fundamental principles of equal justice under law mandate that this case be remanded for the appointment of counsel who will investigate appellant's contention, supporting the contention with legal authority and articulation which appellant, a prisoner and non-lawyer, cannot. Retained counsel, confronted with a single decision which arguably may stand against his client's claim, would not, like appellant's appointed counsel, cease being an advocate and merely file a brief against his client.

The majority's concurrence in appointed counsel's abdication of his duty as an advocate underscores the danger of permitting an appellant's appointed lawyer to be the "judge" of his case. As then Judge (now Chief Justice) Burger has observed, "[c]ounsel . . . must remember that under our adversary system an appellate court cannot function efficiently without lawyers to present whatever there is to be said on behalf of appellant, however meager his claims may be, so that the Court can make an informed appraisal." *Johnson v. United States*, 360 F.2d 844 (D.C. Cir. 1966) (concurring opinion). The American Bar Association Project on Standards for Criminal Justice echoes this view: "The court's processes will be aided, not impeded, if a trained legal mind has been applied to presentation of the issues. This consideration surely underlies the Supreme Court's position in *Anders*." ABA Standards, The Defense Functions, § 8.3(b), Commentary at 299–300 (Approved Draft, 1971). See also ABA Standards Providing Defense Services, § 5.3, Commentary at 52 (Approved Draft, 1968).

The importance of conscientious, effective advocacy to our system of justice cannot be overemphasized.

"Where every step on the way to judgment has been tested and contested, the chance of error in the ultimate decision is reduced to a minimum. The better the case is presented on each side, and the keener and more skillful the debate before him, the more likely is it that the judge will reach a just and sound judgment. That is why it has

been said that a strong Bar makes a strong Bench. It is, then, as contributing an essential element to the process of the administration of justice that the profession of the advocate discharges a public function of the highest accountability and importance."

MacMillan, "The Ethics of Advocacy" (1916), reprinted in *Jurisprudence in Action* at 307. Thus, it is clear that appointed counsel's allegation that he has thoroughly reviewed the record, together with his submission of a brief against his client, cannot suffice to satisfy counsel's duty to this Court and to his client. A contrary conclusion not only derogates the profession of advocacy but also impedes the process of fair, equal and efficient appellate review.

The Constitutions of this Commonwealth have consistently recognized the importance of the assistance of counsel since William Penn's Charter of Privileges in 1701. Thus, it is especially ironic that, in this case, where appellant has received no assistance from his appointed "advocate," a majority of this Court should summarily affirm judgment of sentence, thereby compelling appellant to turn to the Federal Courts for vindication of his constitutional right to effective assistance of counsel. See *Ferri v. Ackerman*, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), reversing 483 Pa. 90, 394 A.2d 553 (1978); *United States ex rel. Sullivan v. Cuyler*, 631 F.2d 14 (3d Cir. 1980).

Because appellant's counsel has taken it upon himself to prosecute the case against his client, no purpose would be served by requiring his continued "assistance" to appellant. Therefore, I agree with Mr. Chief Justice O'Brien that the record should be remanded to the trial court to permit the appointment of new counsel who will represent appellant as an advocate discharging "a public function of the highest accountability and importance," MacMillan, supra, and in the manner to which he is constitutionally entitled.

O'BRIEN, C. J., joins in this dissenting opinion.