J-A16045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3114 EDA 2024 |

Appeal from the Decree Entered October 28, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000406-2023

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                      **FILED JULY 11, 2025**

Appellant, M.W. ("Father"), appeals from the decree entered in the Philadelphia County Court of Common Pleas, which granted the petition filed by the Department of Human Services ("DHS") for involuntary termination of Father's parental rights to his minor child, K.W. ("Child") (born May 2015). We affirm and grant counsel's petition to withdraw.

In its opinion, the trial court set forth the relevant facts and procedural history of this case as follows:

> On October 10, 2023, DHS filed a Petition For Involuntary Termination of Parental Rights for Father. Mother voluntarily signed consents to have her parental rights terminated as to [Child]. The Petition for Father stated that reunification with Father is not a viable permanency option for [Child] as Father has failed to achieve full and continuous compliance with the established single case plan objectives to facilitate reunification with [Child]. Father has also failed to consistently visit, plan for, and provide for the child throughout her time in placement. The Petition alleged that

it is in [Child's] best interest to change her permanency goal to adoption and terminate the parental rights of Father. [Child] has been placed in the home of [K.S.] since March 2, 2020. K.S. is committed to providing for [Child's] basic needs as well as providing a safe and loving home.

The hearing on the Petition for Involuntary Termination of Parental Rights was held on October 28, 2024, before this [c]ourt. [The court appointed separate counsel to represent Child's legal and best interests at the hearing].

(Trial Court Opinion, filed 1/31/25, at 7-8).

At the hearing on October 28, 2024, this [c]ourt heard clear and convincing evidence from [Community Umbrella Agency ("CUA")] Case Manager, Lashana Kimbrough, who testified she was the case manager from February 2022 until November 2023, and had reviewed the entire case file. Ms. Kimbrough testified the case became known to DHS because there was a [General Protective Services ("GPS")] report in January 2019 due to abandonment, homelessness, inadequate health care, mental health concerns, substance abuse, and domestic violence related to Mother. [Child] was adjudicated dependent on January 31, 2019, due to Mother's present inability to parent and since then [Child] has continuously been in DHS custody. [Child's] Father was not involved when the case became known to DHS.

Ms. Kimbrough testified the initial single case plan objectives for Father were established in 2020 and were substantially the same up through when she stopped being the case manager in November 2023. Ms. Kimbrough testified Father's single case plan objectives were to obtain a home, allow APM to assess the home, maintain involvement with CUA, attend [Child's] medical appointments and blood transfusions [for Child's sickle cell disease], follow up with medical trainings, provide proof of income, and attend visits with [Child] as scheduled and arranged. Ms. Kimbrough made Father aware of his objectives and reviewed a copy with him.

Ms. Kimbrough further testified that for a time Father was [compliant] with some of his objectives while she was the case manager. Father had appropriate housing, he was in

contact with CUA, and he was having weekly visits with [Child]. According to Ms. Kimbrough, at first the visits were unsupervised in the community, but then they had to be changed to supervised at the agency as Father had some issues with the resource parent. Ms. Kimbrough testified Father stopped attending these visits in March 2023 with his last [visit] being on March 14, 2023. Ms. Kimbrough testified from that time until she stopped being the case manager in November 2023, Father did not have any contact with Ms. Kimbrough to even ask about [Child].

Ms. Kimbrough testified Father was aware that compliance with his single case plan objectives was necessary for reunification with [Child]. Ms. Kimbrough stated Father knew that failing to comply would likely result in a goal change to adoption.

CUA case manager, Jacqueline Tillman, who took over as case manager in November 2023, also testified at the hearing and stated she remains the current case manager. Ms. Tillman testified she is required to maintain a case record and she reviewed the entire file. Ms. Tillman testified Father's current single case plan objectives are to allow APM to assess his home for safety, maintain involvement with CUA services, attend visits as scheduled and arranged which will be at [Child's] discretion and per [c]ourt order, and follow through with family therapy for [Child] as recommended. Ms. Tillman testified she did not have any contact with Father when she was assigned case manager as they did not have Father's information. Her first contact with Father was at the [c]ourt hearing on February 12, 2024. At the hearing, Father did provide Ms. Tillman with his contact information including his address and phone number. Ms. Tillman could not confirm if Father's housing was appropriate as she never went out to the home and the correspondence she sent to him at the address he provided was returned to her.

Ms. Tillman testified at the time of the February 2024 hearing, Father had not visited with [Child] in almost a year and he was not in contact with CUA. Ms. Tillman testified she was asked by the [c]ourt to find out if [Child] wanted to have visits with Father. When she spoke with [Child], Ms. Tillman testified [Child] burst out in tears, and said she does

not want to have any visits or communication with Father. Ms. Tillman further testified after that hearing, any time a [c]ourt hearing was coming up, [Child] would get emotional and have outbursts at school. Ms. Tillman also testified that since the conversation with Father in February 2024, Father has not reached out to her or tried to find out how [Child] was doing.

Ms. Tillman testified Father has never been fully compliant with his objectives. Ms. Tillman stated she does not believe Father has alleviated the circumstances that brought [Child] into DHS care. Ms. Tillman further stated she does not believe Father is capable of caring for [Child] because he never completed any of the medical classes for [Child] and he never engaged in anything for [Child's] medical care.

Father also testified at the hearing and took little accountability for his failure to complete his single case plan objectives. Father testified he was still incarcerated when [Child] went into DHS custody. Father was released from incarceration in February 2020 and got in contact with CUA immediately and he was able to get set up for visits with [Child]. Father testified and confirmed he was made aware of his single case plan objectives at that time. Father testified he is currently residing with his [m]other for about eight months and the home is not appropriate for [Child] to reside there as it does not have enough room. Father testified he is employed working under the table. Father testified he has never gone to any medical or dental appointments with [Child] because he was never made aware of them. Father further stated he was supposed to receive medical training for [Child] but was told the hospitals did not have classes and instead he was just given a booklet. Father knew [Child] had sickle cell disease since she was born.

Father testified he regularly visited with [Child] from February 2020 until March 2023. Father further testified he always had problems with the resource parent during this time. Father testified and confirmed he has not been in touch and has not made efforts to stay in touch with CUA since March 2023. Father stated the reason he did not keep in touch with CUA was because he was told [Child] did not want to see and talk to him. Father testified he felt CUA and

> the resource parent were trying to get his rights terminated. Father further testified he believes he can adequately care for [Child] even though he might not have everything together.

(***Id.*** at 12-16) (internal citations omitted). At the conclusion of the hearing, the court found that DHS met its burden by clear and convincing evidence to terminate Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). On November 25, 2024, Father timely filed a notice of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i) statement.

Preliminarily, appellate counsel seeks to withdraw representation pursuant to ***Anders v. California***, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and ***Commonwealth v. Santiago***, 602 Pa. 159, 978 A.2d 349 (2009). ***Anders*** and ***Santiago*** require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. ***See Santiago, supra*** at 173-79, 978 A.2d at 358-61. "Substantial compliance with these requirements is sufficient." ***Commonwealth v. Reid***, 117 A.3d 777, 781 (Pa.Super. 2015). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. ***Commonwealth v. Palm***, 903 A.2d 1244,

1246 (Pa.Super. 2006). *See also Commonwealth v. Dempster*, 187 A.3d 266 (Pa.Super. 2018) (*en banc*).

In *Santiago, supra* our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither *Anders* nor [*Commonwealth v. McClendon*, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under *Anders* are references to anything in the record that might arguably support the appeal.
>
> *    *    *
>
> Under *Anders*, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

*Santiago, supra* at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 178-179, 978 A.2d at 361. *See also In re J.D.H.*, 171 A.3d 903, 905-06 (Pa.Super. 2017) and *In re V.E.*, 611 A.2d 1267, 1275 (Pa.Super. 1992) (explaining that *Anders* procedure applies in appeals from termination of

parental rights and goal change orders).

Instantly, appellate counsel has filed an application to withdraw. The application states that counsel has reviewed the record and determined that there are no non-frivolous grounds for an appeal. Counsel subsequently sent a copy of the **Anders** brief to Father. Counsel also provided Father with a letter explaining his right to retain new counsel or proceed *pro se* to raise any additional points Father deems worthy of this Court's attention. In the **Anders** brief, counsel summarized the facts and procedural history of Father's case. The argument section of the brief refers to portions of the record that might arguably support Father's issues on appeal. Counsel also provides the reasons for counsel's conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the technical requirements of **Anders** and **Santiago**. **See Reid, supra**.

Father has not responded to the **Anders** brief *pro se* or with newly retained private counsel. Counsel raises the following issues on Father's behalf:

> Whether the trial court abused its discretion and committed legal error terminating Father's parental rights since DHS failed to prove by clear and convincing evidence that Father's parental rights should have been terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) since Father substantially completed his family case plan objectives as required to have [Child] returned to him.
>
> Whether the trial court erred in terminating Father's parental rights since DHS failed to prove by clear and convincing evidence that the best interests of [Child] were served by terminating Father's parental rights pursuant to

23 Pa.C.S.A. § 2511(b) since there was a strong emotional and parental bond between Father and [Child] which would have a negative effect on [Child] if the parental bond was permanently severed?

(Father's Brief at 5).

In his issues combined, Father argues that Child was initially removed from the home based on Mother's actions, as Father was incarcerated at the time of removal. Father asserts that for a period, he was fully compliant with his court-ordered objectives. Father also contends that he had unsupervised visits and was advancing to overnight ones. Father concedes that due to a dispute with Child's foster parent he stopped visiting with Child and ceased contact for over a year. Father emphasizes his love for his child. Father claims he has a parent-child bond with Child, and it would be detrimental to Child to sever that bond. Father concludes termination of his parental rights was improper under Section 2511(a)(1), (2), (5), (8), and (b), and this Court must grant relief. We disagree.

Appellate review in termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

Absent an abuse of discretion, an error of law, or

insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

The trial court granted involuntary termination of Father's parental

rights under Section 2511(a)(1) and (b), which state:[1]

### § 2511. Grounds for involuntary termination

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1) and (b). When conducting a termination analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of…his parental rights does the court engage in

---

[1] Although the court also found termination proper under Section 2511(a)(2), (5), and (8), "[p]arental rights may be involuntarily terminated where any **one** subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117 (emphasis added). Thus, we focus our review on Section 2511(a)(1) and (b).

the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The

court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond."

*Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

Further, our Supreme Court has clarified that, in making a Section 2511(b) determination, a trial court must analyze: (1) whether the parental bond is "necessary and beneficial to the child;" (2) "the child's need for permanency and length of time in foster care;" (3) "whether the child is in a pre-adoptive home and bonded with foster parents;" and (4) "whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety and stability." *Interest of K.T.*, ___ Pa. ___, ___, 296 A.3d 1085, 1113 (2023). Moreover, the Court explained that, when reviewing the nature of the parental bond, a court must consider "whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* Importantly, the *K.T.* Court's decision is particularly relevant to an analysis of an existing parental-bond. "In cases where there is no evidence of any bond between the

parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

Instantly, the trial court explained its rationale for terminating Father's parental rights as follows:

> This [c]ourt found both Ms. Kimbrough's and Ms. Tillman's testimony credible regarding Father's single case plan objectives and his relationship with [Child]. Father was not involved at the time [Child] was [adjudicated dependent] in 2019 but the single case plan objectives were established for Father in 2020. The objectives were communicated to Father and Father was aware of [Child's] involvement with CUA. Father was aware he had to comply with his objectives and remain in contact with CUA to have a relationship with [Child].
>
> Ms. Kimbrough did testify Father was complying with some of his objectives. Father, however, has not familiarized himself with [Child's] medical condition and how to care for it. Father also does not have appropriate housing as Father himself stated his current home is not appropriate for [Child].
>
> Father was having visits with [Child] up until March 2023 but then he stopped.
>
> Father indicated to the [c]ourt the visits stopped due to a conflict with the resource parent but Father's visits were changed to occur at the agency so to not have any involvement with the resource parent. For some reason Father still did not avail himself for the visits. Father had every ability to see [Child] over those eleven months and for whatever reason Father decided not to see [Child]. The [c]ourt finds this evidenced an intent by Father to abandon the child over that time period.
>
> At the [c]ourt hearing in February 2024, Father did tell the

[c]ourt he wanted to see [Child] and the [c]ourt ordered Ms. Tillman to talk with [Child] immediately to see if she wanted to visit Father. According to Ms. Tillman, [Child] did not want to have visits with Father and [Child] was terrified about seeing Father. The [c]ourt also heard testimony that [Child] had never asked about Father or ever requested any type of visits with him.

This [c]ourt found Father has not fully complied with his single case plan objectives over the life of the case. The [c]ourt also found Father has never alleviated the concerns that brought [Child] into care. Based on these reasons, [t]he [c]ourt found that DHS met its burden by clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8).

In regard to 2511(b) and the best interest of [Child], Ms. Tillman testified that [Child] is currently placed in a kinship home with a family friend, [K.S.], since January 2019. The current placement is a pre-adoptive home. Ms. Tillman testified that [Child] has a very strong relationship with her caregiver and their family. Ms. Tillman testified that she calls her caregiver Kay and she also has been referencing her as "mom." Ms. Tillman testified that the caregiver meets all of [Child's] needs and [Child] looks to her caregiver for love, protection, and support.

According to Ms. Tillman, there is no parent-child bond between Father and [Child]. Ms. Tillman stated [Child] seems terrified when Father's name is mentioned. [Child] has never asked about or requested any visits with Father since Ms. Tillman took over as case manager. Ms. Tillman testified she does not believe [Child] would suffer irreparable harm if Father's parental rights were terminated because [Child] is in a loving environment, she loves her caregiver, and she does not reference anything about Father.

The [c]ourt found credible the testimony from Ms. Tillman that there is no parent-child bond between Father and [Child]. According to Ms. Tillman, [Child] appears terrified of Father when she hears his name, [Child] has not asked about Father, or expressed a desire to see or talk to Father. The [c]ourt heard testimony as to the very good relationship

- 14 -

between [Child] with the current caregiver, [K.S.], who she has been with since 2019. All of [Child's] basic daily needs are being met by [K.S.] and [Child] looks to [K.S.] for love, protection, and support. Ms. Tillman testified that termination of parental rights would not have a detrimental effect or cause any irreparable harm on the developmental, physical and emotional needs of [Child].

The [c]ourt found there is no parental bond between Father and [Child]. The [c]ourt also found that [Child] has a very strong parental bond with [K.S.], [Child] likes being in the home of [K.S.], it is a pre-adoptive home, and the impact of termination did not outweigh the benefit of moving [Child] toward a permanent adoptive home. The pre-adoptive home is meeting [Child's] developmental, physical, and emotional needs, including [Child's] need of love, comfort, security, safety, and stability. Consequently, the termination of Father's parental rights would be in the best interest of the child pursuant to 23 Pa.C.S.A. § 2511(b).

There was testimony from Father that demonstrated a genuine desire to see and maintain a parent-child relationship with [Child]. However, Father did not see or have any involvement with [Child] for eleven months which was his own fault. At that point, [Child] made a decision she did not was to see or be involved with her Father moving forward. The [c]ourt considered all of the evidence and testimony before it as well as the permanency interest of [Child] in making its decision.

Based upon the testimony and evidence presented at the Termination of Parental Rights Hearing, the [c]ourt found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and that the termination of Father]s parental rights would be in the best interest of the child pursuant to 23 Pa.C.S.A. § 2511(b).

(Trial Court Opinion at 16-19) (internal citations omitted).

The record supports the court's analysis that termination of Father's parental rights was proper under Section 2511(a)(1) and (b) for the reasons

outlined above. ***See In re Z.P., supra***. Following an independent review of the record, we agree that the appeal is frivolous. ***See Dempster, supra***; ***Palm, supra***. Accordingly, we affirm and grant counsel's petition to withdraw.

Decree affirmed. Petition to withdraw is granted.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/11/2025