J-S52043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: N.N.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: H.R., MOTHER | : | No. 1210 EDA 2014 |

Appeal from the Decree April 7, 2014
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s): 2013-9081-37

| | | |
|---|---|---|
| IN RE: N.W.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: H.R., MOTHER | : | No. 1211 EDA 2014 |

Appeal from the Decree April 7, 2014
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s): 2013-9082-37

BEFORE:  GANTMAN, P.J., ALLEN, J., AND FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                 **FILED AUGUST 20, 2014**

Appellant, H.R. ("Mother"), appeals from the decree entered in the Bucks County Court of Common Pleas, which involuntarily terminated her parental rights to her minor children, N.N.R. and N.W.R. ("Children").  We affirm and grant counsel's petition to withdraw.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

_____

*Former Justice specially assigned to the Superior Court.

As a preliminary matter, appellate counsel seeks to withdraw her representation pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007). "After establishing that the antecedent requirements have been met, this Court must then make an independent evaluation of the record to determine whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006) (quoting **Commonwealth v. Townsend**, 693 A.2d 980, 982 (Pa.Super. 1997)).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor **McClendon**[1] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> *   *   *
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-79, 978 A.2d at 361.

Instantly, counsel filed a petition to withdraw. The petition states counsel thoroughly reviewed the record and determined the appeal is wholly frivolous. Counsel notified Mother of counsel's request to withdraw. Counsel also supplied Mother with a copy of the brief and a letter explaining Mother's right to retain new counsel or to proceed *pro se* to raise any additional points that Mother deems worthy of this Court's attention. (**See** Letter to

---

[1] **Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981).

- 3 -

Mother, dated June 13, 2014, attached to Petition for Leave to Withdraw as Counsel.)  In the **Anders** brief, counsel provides a summary of the facts and procedural history of the case.  Counsel's argument refers to relevant law that might arguably support Mother's hearsay issue raised on appeal. Counsel further states the reasons for his conclusion that the appeal is wholly frivolous.  Therefore, counsel has substantially complied with the requirements of **Anders** and **Santiago**.

As Mother has filed neither a *pro se* brief nor a brief with privately retained counsel, we review this appeal based on the issues raised in the **Anders** brief:

> SHOULD [MOTHER'S] COUNSEL BE PERMITTED TO WITHDRAW HIS APPEARANCE BECAUSE THE APPEAL IS WHOLLY FRIVOLOUS?
>
> WAS [MOTHER] UNFAIRLY PREJUDICED BY THE ADMISSION, OVER OBJECTION, OF HEARSAY TESTIMONY ABOUT HER EFFORTS TO OBTAIN TREATMENT AND HOUSING?

(**Anders** Brief at 3).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable James M. McMaster, we conclude Mother's hearsay issue merits no relief.  The trial court opinion comprehensively discusses and properly disposes of the hearsay question presented.  (**See** Trial Court Opinion, filed May 2, 2014, at 10-13) (finding: **(2)** Mother has history of substance abuse, mental health problems, and criminal behavior that caused repeated incarcerations; Mother

has not demonstrated ability to live life independent of illegal substances; Mother failed to meet permanency goals for reunification with Children such as getting sober, staying out of jail, and obtaining housing; Mother's past and recent history demonstrates inability to provide for Children's basic needs, including physical safety; at time of evidentiary hearing, Children had been in care of Children and Youth Social Service Agency ("Agency") for approximately thirty-nine months; during this time, Mother entered four (4) treatment programs but completed only one program and continued to abuse substances; Mother has not demonstrated ability to refrain from drug use to permit trial court to find credible her testimony that she is now sober and will remain that way; Children have bonded to foster parents, who are their paternal aunt and her boyfriend; representative of Agency testified Children look to foster parents as their own parents, and go to foster parents for their needs; Children also turn to foster parents for love and comfort; N.N.R. expressed wish to stay with foster parents; once placed with foster parents, N.W.R. became more active and all developmental problems disappeared; foster parents provide Children with stable home life that Children need to thrive; Children are not exposed to drug use with foster parents; decision to terminate Mother's parental rights best serves Children's needs and welfare, and does not sever existing beneficial relationship or result in irreparable harm to Children; Agency met its burden under 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b)). The record supports the trial

court's decision; therefore, we see no reason to disturb it. Accordingly, we affirm on the basis of the trial court's opinion and grant counsel's petition to withdraw.

Decree affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2014

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## ORPHANS' COURT DIVISION

IN RE:     **N.N.R.**               :     **NO. 2013-9081**

IN RE:     **N.W.R.**               :     **NO. 2013-9082**

                                        :

        **INVOLUNTARY TERMINATION**    :

        **OF PARENTAL RIGHTS OF H.R.**    :

## OPINION

H.R. (hereinafter referred to as "Mother") has appealed our April 7, 2014 Decree granting the petition of Bucks County Children & Youth Social Service Agency (hereinafter referred to as the "Agency") to terminate Mother's parental rights as to N.N.R. and N.W.R. (hereinafter referred to as "Children"). An evidentiary hearing regarding Mother's parental rights was held on April 7, 2014. On that same date, we heard evidence concerning Father's consent to N.N.R.'s and N.W.R's adoption. On April 7, 2014, we decreed that Mother's parental rights as to Children be involuntarily terminated, and we also granted the Agency's Petition to Confirm Consent to Adoption concerning Father and terminated Father's parental rights. As Father has not appealed our decrees, we will focus our discussion on Mother.

## BACKGROUND

N.N.R. was born July    2007 and N.W.R March    2009. Mother also has two older children, not part of the instant action, who have been in the care of the Agency for a number of years. Children came into the care of the Agency in January 2010. The Children were only in the Agency's care for one week. The Children came back into the care of the Agency on August 31, 2010 and stayed there until November 1, 2010 when they were released back to Mother's care. The Children came into the Agency's care for a third time on January 7, 2011 and have been in the Agency's care ever since. A formal dependency order was

2013-A9081.42   Opinion                1

Filing# 910446

     Rcpt# 243384   $0.00   5/2/2014 9:14 AM

       County of Bucks Register of Wills

entered in July 25, 2011. Children were placed with their current foster family, paternal aunt and boyfriend, on June 8, 2012 and have resided with them continuously since that time.

Mother testified that it is her understanding that the Children have not been returned to her because she has not had housing, she did not complete the permanency plan goals, and that she stayed in a relationship with the Father. Her relationship with Father is now over as Father is now married to someone else. Mother testified that her permanency plan goals included the continuance of counseling, following up and continuing with mental health treatments, to refrain from using illegal substances, to stay out of prison, and to maintain appropriate housing to accommodate Children.

Mother testified that for the past thirty nine months that the Children were in the care of the Agency, she has been in jail or rehab facilities for a good part of it. From October 19, 2011 to June 27 2012, she was in the Bucks County Correctional Facility for simple assault. On September 12, 2012, she went back to the Bucks County Correctional Facility on charges of receiving stolen property and theft. Mother was there until November 29, 2012 when she was released to Belmont Behavioral Health in Philadelphia, a drug and alcohol program. Mother testified that she left Belmont before Christmas, without finishing the program. Mother stayed with Father and started doing drugs again; marijuana and Percocet's to be exact.

Mother eventually went to Penn Foundation for treatment for her mental health and substance abuse issues. Mother testified that she was terminated from the program due to her admission to using heroine. She then either lived on the streets or at Father's home.

Mother then turned herself into Eagleville Hospital sometime in 2013 for rehab. She testified that she detoxed, completed the program, and was clean. Mother then went to Alternative Counseling Associates ("ACA") in Pottstown and claimed she was doing well. She was there from March 2013 to May 6, 2013, when she was discharged from the facility, without completing the program. Mother then went to a recovery house and used it as an address but could not

2

afford the payments. Therefore, on July 4, 2013, she left Pennsylvania and went to her mother's in Florida. The Agency did not know her whereabouts at this time, but Mother testified that the Children and the foster parents were aware she was in Florida. On August 12, 2013, Mother turned herself in to the police in Florida due to having a bench warrant in Bucks County for violation of parole. She was transferred back to Pennsylvania on August 19, 2013. At her violation of parole hearing, she signed a stipulation to serve six months of jail time.

Mother testified that she has talked to Children about staying with the foster parents permanently. The Agency submitted a letter from Mother to one of her two older children stating the foster home would be NNR and NWR's forever home, which was entered into evidence as Exhibit CY-1. The Agency also submitted a letter to the foster parents thanking them for everything they have done, which was entered into evidence as Exhibit CY-2. Mother testified that she agrees the children have been in limbo for the last thirty nine months. She also agreed that the children deserved permanency and that she has not been able to give them permanency for the last thirty nine months.

Mother also testified as to her plans for after her release from prison. Mother's release date is expected to be on May 9, 2014. She plans to attend the Bridge and Transitional program in Philadelphia. This program also helps with housing and wrap around services. The program is holding a bed for her and will be funded by the Social Security she is receiving. Mother is receiving Social Security for her back problems, Post-Traumatic Stress Disorder, anxiety, and depression, but hopes to also obtain employment for a further source of income. Mother hoped to have a place for her and the children within the next six months. Currently, Mother is on multiple medications for A.D.H.D. and A.D.D. Mother's counsel submitted a letter written by Mother for the Court to read, which was entered into evidence as Exhibit M-1. Mother's testimony finished with her stating that she loves her children and admitting to having past problems, but she did not believed she was a lost cause yet and wants a chance to prove herself. Mother also admitted to growing up in the system herself.

3

Melissa Dysinger, a caseworker with the Agency, testified that she has been the caseworker on this matter since February 2011. Dysinger stated before and after she became involved, the Agency has offered to help Mother. Mother was given a referral to Links, which offers parent education, therapists, and a case manager. Dysinger testified that Links had a hard time meeting with Mother at first, but after a few months Mother did start attending. Mother's involvement with Links ended due to her incarceration.

Dysinger also testified that when Mother was released from incarceration, a list of therapists were given to places that Mother's insurance would cover. Dysinger stated that Mother was not compliant with addressing mental health issues when she was not incarcerated. According to Dysinger, the Agency also worked with ACA and Penn Foundation to accommodate Mother's needs while she was attending those facilities. The Agency also was not initially aware that Mother was at Eagleville. Dysinger testified that the Agency tried to help Mother obtain housing through Section 8, but the Housing Case Manager Mother worked with stated Mother did not fill out the paperwork so she was dropped from the list. Dysinger also testified that Mother often refused services at first but later agreed.

On February 5, 2013, an Interim Permanency Hearing was held in front of the Honorable Robert Mellon. At the hearing, the Agency informed the Court of the situation and was requesting a placement goal change from reunification to adoption. While the Court did not change the placement goal at that time, they informed Mother that if there were any new concerns showing she is not moving toward reunification, then the Agency had permission to file for termination of her parental rights.

Dysinger testified that she meets with Mother every four to six weeks. She has talked to Mother about what Mother is doing, what Mother needed to work on, and would encourage her. She has talked to Mother about her concern for the Children being in care for this long and the length of time Mother would need to correct herself. Dysinger could not see in the foreseeable future that the Children would be returned to Mother. Dysinger also testified that Mother has

4

stated to her that it would be best if the Children stayed with the foster parents. Dysinger stated that Mother would go back and forth on the issue of signing the Consent to Adoption and that Mother would become guilty causing her not to sign.

Dysinger further testified about the state of the Children. The Children are the only children in the foster home. The Children refer to the foster parents as Mom and Dad and look to them to meet their needs. N.N.R. has expressed a wish to stay with the foster parents. N.W.R. initially seemed to be developing slowly, but after two months of being in the foster home, those issues dissipated. The foster parents allow Mother to have contact with the Children and are willing to do so after termination if granted. Dysinger also stated that when Mother visits with the Children, they play tag or color.

The Agency filed its initial Petition for Involuntary Termination of Mother's parental rights on July 19, 2013. The Agency filed a Petition to Confirm Father's Consent to Adoption on that same date. A hearing was subsequently scheduled, and continued several times until the Court ultimately heard the evidence presented on April 7, 2014. The Agency sought termination under 23 Pa.C.S. § 2511(a)(2), (5) and (8). These subsections provide, in pertinent part:

(a)     General rule. – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period

5

of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

## APPELLANT'S STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Mother filed her Notice of Appeal on April 14, 2014. Her appeal was accompanied by a Concise Statement of Matters Complained of on Appeal, as required by Pa.R.A.P. 1925(a)(2), which we have reproduced here, verbatim.

1. The Court erred in allowing Social Worker Melissa Dysinger to give hearsay and foundationless testimony about services other performed for, and reports they gave about, the Respondent.

## STANDARD OF REVIEW

Our duty, when considering a termination of parental rights petition, is twofold. We must determine whether the Agency, the party bearing the evidentiary burden, has demonstrated that the statutory grounds for termination of parental rights have been met. Once we determine the Agency has met that

6

burden, we must decide whether the termination of parental rights meets the best interests of the child. 23 Pa.C.S. § 2511.

The Agency's evidentiary burden, as the petitioning party, was to demonstrate by clear and convincing evidence that grounds existed to terminate Mother's parental rights. *In re Z.P.*, 994 A.2d 1108, 1116 (Pa.Super., 2010) (*citing In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super., 2002)); *see also In re C.P.*, 901 A.2d 516, 520 (Pa.Super., 2006). "The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *In re Z.P.*, 994 A.2d at 1116 (*citing In re. J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super., 2002)).

Upon appeal, the appellate court's "scope of review is broad and comprehensive, but [its] standard of review is narrow." *In re C.P.*, 901 A.2d at 520. The appellate court will only determine whether our findings, entitled to reasonable deference, are supported by competent evidence and whether we adequately considered the effect our decision would have upon the needs and welfare of the child. *In re I.J.*, 972 A.2d 5, 8 (Pa.Super., 2009) (*quoting In re S.D.T., Jr.*, 934 A.2d 703, 705-06 (Pa.Super., 2007)). The trial court, as the fact finder, determines witnesses' credibility and is the "sole and final arbiter of all conflicts in the evidence." *Id.* Absent an abuse of discretion, insufficient evidentiary support or an error of law, our decision must be upheld. *In re Z.P.*, 994 A.2d at 1115. Our decision must be affirmed if our findings are supported by competent evidence, "even if the record could support an opposite result." *Id.* at 1116.

DISCUSSION

By terminating a parent's rights to her child, a court interferes with that parent's basic constitutional right to raise her child in the manner in which she so chooses. *In re J.W.*, 578 A.2d 952, 957 (Pa.Super. 1990) ("The custody, care, nurture, and instruction of children resides first in the children's natural

7

parents, as a constitutionally recognized fundamental right.") A decision to terminate parental rights "is one of the most serious and severe steps a court can take, carrying with it great emotional impact for the parent and the child." *In re C.P.*, 901 A.2d at 520 (*citing In re Bowman*, 647 A.2d 217, 218-19 (Pa.Super. 1994)). A court's intrusion into the family structure is only warranted in exceptional circumstances and only when it is clearly necessary to intrude. *In re Matsock*, 611 A.2d 737, 742 (Pa.Super. 1992) (*quoting In re Adoption of Michael J.C.*, 473 A.2d 1021, 1026 (Pa.Super. 1984) and *In Interest of C.M.E.*, 448 A.2d 59, 63 (Pa.Super. 1982)). However, once a parent has demonstrated a "failure to fulfill his or her parental duties," the parent's basic constitutional right to parent her own child converts "to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B.L.L.*, 787 A.2d 1007, 1013-14 (Pa.Super. 2001).

Our initial focus in a termination hearing is upon the conduct of the parent when we consider the various avenues for termination of parental rights listed in §2511(a). Once we have determined that the parent's conduct, or lack thereof, calls for termination of her parental rights under any of the §2511(a) subsections, we turn to "whether the termination will clearly promote the welfare of the child." *Id.* at 1013. "Above all else in determining whether parental rights should be terminated, adequate consideration must be given to the needs and welfare of the child." *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). Section 2511(b) instructs us to consider the impact the termination of parental rights will have on the welfare and needs of the child. We are to consider a number of factors, including the "nature and status of the parent-child bond," the "importance of continuity of relationships to the child," "whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re I.J.*, 972 A.2d 5, 12 (Pa.Super. 2009) (*citing In re K.Z.S.*, 946 A.2d 753, 760 (Pa.Super. 2008)). We are also to consider other intangible factors, "such as love, comfort, security, and stability." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005).

The Agency filed for termination of Mother's parental rights under three subsections of 2511(a): 2511(a)(2), (5) and (8). Though the Agency argued that termination was appropriate under all three subsections, Mother's parental rights could have been appropriately terminated if only one of those selected subsections was satisfied and we appropriately analyzed the 2511(b) considerations. *In re Z.P.*, 994 A.2d at 1117. The Agency was required to prove, by clear and convincing evidence, all of the elements outlined in a particular selected subsection, reproduced above. Mother complained in her appeal that we erred in allowing Agency Caseworker Melissa Dysinger to give hearsay and foundationless testimony about services others performed for, and reports they gave about Mother. In our opinion, there was enough evidence other than this testimony to determine that Agency met its burden under all three subsections, and that termination of Mother's parental rights was in the best interest of the Children under §2511(b).

In *In re Baby Boy Robinson*, the Supreme Court affirmed a lower court's decision to terminate parental rights when the lower court permitted the caseworker and hospital caseworker to read from notes which were prepared from unauthenticated records for use at the hearings. *In re Baby Boy Robinson*, 406 A.2d 1365, 1368 (Pa. 1979). There, the caseworker's notes were taken from CWS records which she dictated when she handled appellant's case prior to the period at issue, while hospitals notes were taken from records which were compiled on appellant and two of her daughters when they used the Hospital's facilities at a date prior to the period at issue. *Id.* The Supreme Court's reasoning was that "assuming that the lower court should not have permitted this testimony, this error was harmless since the testimony concerned a period of time prior to the thirty nine month period (July, 1974 to October 4, 1977) that appellant did not perform her parental duties; if this testimony was eliminated from the record, the evidence would still support the lower court's termination of appellant's parental rights." *Id.* at 1368-69. Similarly here, while we do not believe we committed an error in allowing the testimony in question, even if this

9

testimony was eliminated from the record, the other evidence still supports our decision to terminate Mother's parental rights. We will discuss why we believe the evidence still supports our decision in the following paragraphs.

Section 2511(a)(2) requires that the agency prove that Mother's repeated and continued incapacity, abuse, neglect or refusal to parent caused the Children to be without essential parental care, control or subsistence necessary for their physical or mental well-being and the conditions and causes of the incapacity, etc., cannot or will not be remedied by the parent. The Superior Court has held that grounds for termination of a parent's rights "'are not limited to affirmative misconduct.'" *In re Z.P.*, 994 A.2d at 1117 (*quoting In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). §2511(a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being." *Id.* (*quoting In re E.A.P.*, 994 A.2d 79, 82 (Pa.Super. 2008)). Furthermore, this subsection has been read to assert "'that when a parent has demonstrated a continued inability to conduct his . . . life in a fashion that would provide a safe environment for a child, whether that child is living with the parent or not, and the behavior of the parent is irremediable as supported by clear and convincing evidence, the termination of parental rights is justified.'" *In re Z.P.*, 994 A.2d at 1118 (*quoting In re Adoption of Michael J.C.*, 486 A.2d 371, 375 (Pa.Super. 1984)).

The Children in this case have been in the Agency's care since January 2011, and were placed with the foster parents in June 2012. From the testimony and evidence presented to this Court, Mother has a history of substance abuse, mental health problems and criminal behavior that caused her repeated incarcerations. Mother has not demonstrated the ability to live a life independent of illegal substances and has not been able to stay out of trouble with the law, and that concerns this Court. Mother testified that she understood her reunification goals as laid out by the Agency early on in this case. She testified that she understood that her sobriety, her housing situation and staying out of jail were main issues preventing her reunification with the Children. Mother was given multiple chances to change her ways and become compliant with the

10

permanency plan. At the last Permanency Review Hearing, Judge Mellon did not change the placement goal at that time, but informed Mother that if there were any new concerns showing she is not moving toward reunification, then the Agency had permission to file for termination of her parental rights. Two to three months later, Mother made another mistake by being discharged from another program without completing it and running away to Florida without notifying the Agency, which also led her to violate her parole. It is clear that Mother understands that her reunification with the Children was nearly entirely within her control. She chose to continue inviting drugs into her life and not completing any of the permanency goals.

Though we are instructed to "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination," we are also to look at the evidence "in light of the totality of the circumstances" to determine if the evidence "clearly warrants the involuntary termination." *In re B.,N.M*, 856 A.2d 847, 855 (Pa.Super. 2004). While Mother obviously cares greatly for the Children, her past and her recent history demonstrates an inability to provide for the Children's basic needs, including physical safety. A child requires "love, protection, guidance, and support" as well as stable, appropriate housing and the other physical necessities of life. It is a parent's duty to provide these things, and they "cannot be met by a merely passive interest in the development of the child." *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003) (*quoting In re Burns*, 379 A.2d 535, 540 (Pa. 1977)). While Mother has attended numerous treatment programs for her addiction and mental health issues, she continued to abuse substances and failed to complete all but one program. Mother realized that her choices are preventing her from regaining custody of the Children. This Court found that the Agency clearly met its burden under §2511(a)(2). We also concluded that the Agency met its burden under §2511(a)(5) and (8), which we will now discuss.

The Children have been in the care of the Agency for approximately thirty-nine months at the time of the evidentiary hearing on April 7, 2014. Clearly, the Agency has met the time requirements of §2511(a)(5) and (8). The issues that

11

led to the Agency's involvement are clearly still issues Mother needs to deal with. Mother is still currently incarcerated. She has a history of having her drug addiction being a regular feature in her life and seems only to be able to maintain sobriety while incarcerated. Although Mother intends to be released by May 9, 2014, her housing situation leaves much to be desired as she will not have appropriate housing upon release and will not for at least the next six months thereafter by her own admission. Mother has had a significant amount of time with which to deal with her substance abuse problems and overcome her drug addiction. She had the thirty-nine months during which the Agency has been involved to attain and maintain sobriety. Mother has been provided with treatment programs during this time period. Unfortunately, none of these programs have made an impact. Mother herself stated she has only completed one program out of the four she attended. Mother also testified that she was discharged from at least one for drug use. Mother has not demonstrated an ability to refrain from using drugs, unless incarcerated, in order for this Court to find her testimony that she is now sober and will remain that way credible. For the above reasons, we found that the Agency met its burden under §2511(a)(5) and (8).

As the Agency clearly fulfilled the statutory requirements for termination of parental rights outlined under §2511(a)(2), (5) and (8), we next embarked on an analysis of whether termination of Mother's parental rights would best serve the needs and welfare of the Children. We are instructed by the case law to consider "whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, 994 A.2d at 1121. We are not required to use expert testimony in this analysis, nor are we required to have a formal bonding evaluation completed. *Id.*

While it is obvious in this case that Mother is bonded to both of the Children, a "parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *Id.* (*citing In re L.M.*, 923 A.2d 505, 512 (Pa.Super. 2007)). It is clear to this Court that both Children have bonded to the foster parents, who is their paternal aunt and her boyfriend. Ms. Dysinger's

12

testimony, as a representative of the Agency, described the Children as looking to the foster parents as their own parents. N.N.R. also expressed a wish to stay with the foster parents. Dysinger stated the Children go to the foster parents for their needs. It appeared that N.W.R seemed to be developing slowly, but once placed with the foster parents, that changed. Dysinger testified that after two months with the foster parents, any development problems were gone and N.W.R. became more active.

Additionally, the foster parents provide both of the Children with the stable home life that children need in order to thrive. In their present setting, the Children are not exposed to drug use. The Children have lived with the foster parents for approximately two years now. Both of the Children turn to the foster parents for love and comfort when they need it. It is clear, based on the testimony, that our decision that this would best serve the Children's needs and welfare was the correct decision and would not sever an existing beneficial relationship or result in irreparable harm to the Children. Therefore, the remaining elements of §2511(a)(5) and (8), as well as the entirety of §2511(b), have been proven by the Agency.

## CONCLUSION

Children have continuously been in the care of the Agency for the past thirty nine months. Mother has made little to no effort to complete the necessary objectives set out by the Agency in order to be reunited with the Children. Mother has already been given more time by the Agency and the Court. History has shown that the odds that Mother will turn around and be in a position to parent the Children is poor. The Children have been in the full care of the foster parents since June 2012 and the Agency since January 2011, and it is time that they be assured the stability that is essential to the healthy development of Children. The Children are entitled to permanency and stability. For all of the

foregoing reasons, we granted the Agency's petition to terminate the parental rights of Mother as to the Children.

BY THE COURT

DATE: 5-2-14

James M. McMaster, J.

N.B. It is your responsibility to notify all interested parties of the above action.

14