J-S33029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID DRY | : | |
| | : | |
| Appellant | : | No. 1393 MDA 2016 |

Appeal from the Judgment of Sentence July 25, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0001698-2011,
CP-22-CR-0004993-2015

BEFORE:   BENDER, P.J.E., OTT, J. and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 01, 2017**

David Dry appeals from the judgment of sentence imposed July 25, 2016, in the Dauphin County Court of Common Pleas, following the revocation of his probation and parole in two separate cases.  At Docket No. 1698-2011, Dry pled guilty to two counts of possession with intent to deliver controlled substances ("PWID")[1] (fentanyl).  The court found Dry violated the terms of his parole and sentenced him to serve the balance of his sentence - 12 months, three days' imprisonment.  At Docket No. 4993-2015, Dry pled guilty to one count of terroristic threats.[2]  The court found Dry

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S. § 2706.

violated the terms of his intermediate punishment ("IP") and electronic monitoring sentence, and sentenced him to two years' probation, concurrent with the sentence at Docket No. 1698-2011. Contemporaneous with this appeal, Dry's counsel has filed a petition to withdraw from representation and an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967); *Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981). The sole issue addressed in the *Anders* brief challenges the sufficiency of the evidence supporting the court's revocation of Dry's probation and parole. Based on the following, we affirm the judgment of sentence and grant counsel's petition to withdraw.

The relevant facts and procedural history underlying this appeal are as follows. On December 5, 2012, Dry entered a guilty plea at Docket No. 1698-2011 to two counts of PWID for selling fentanyl to an undercover officer in October and December of 2010. On June 27, 2015, the court imposed concurrent sentences of three to 23 months' imprisonment, and $200 in fines and costs. Dry was immediately paroled. In February of 2015, the trial court determined Dry had violated the terms of his parole by failing to make payments toward his costs and fines. Thereafter, on March 12, 2015, the court resentenced him to serve the balance of his original sentence - 20 months', six days' imprisonment - and again granted him immediate parole.

On June 26, 2015, Dry was arrested and charged with terroristic threats at Docket No. 4993-2015, based upon comments he made to his

caseworker and a nurse at Harrisburg Hospital. He subsequently entered a guilty plea to the charge on January 4, 2016, and was sentenced to a term of two years' IP, with six months of electronic monitoring. The same day, his parole was revoked for a second time at Docket No. 1698-2011, and he was again sentenced to serve the balance of his term - 14 months' and one day imprisonment. Dry was immediately released to the YMCA. A detainer was issued for both cases in May of 2016. On July 25, 2016, the trial court conducted a probation/parole revocation hearing. Dry's probation officer testified that Dry violated several terms of his probation/parole and was discharged from a rehabilitation facility for threatening the staff. At the conclusion of the hearing, the trial court found that Dry violated the terms of his parole at Docket No. 1689-2011, and his probation at Docket No. 4993-2015, and imposed the aforementioned sentences. This timely appeal followed.[3] Thereafter, on September 12, 2016, the trial court modified Dry's

---

[3] On August 29, 2016, the trial court ordered Dry to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After requesting, and being granted, an extension of time, on October 20, 2016, Dry's counsel filed a statement of her intention to file an **Anders/McClendon** brief. **See** Pa.R.A.P. 1925(c)(4).

On October 28, 2016, this Court issued a *per curiam* order dismissing the appeal for failure to file a docketing statement. However, the court granted Dry's motion for reconsideration, and promptly reinstated the appeal on November 7, 2016. Following this Court's reinstatement of the appeal, the trial court entered a second order on November 29, 2016, directing Dry to file a concise statement. Thereafter, on December 12, 2016, counsel again filed notice of her intention to file an **Anders/McClendon** brief in lieu of a concise statement.

sentence at both dockets "to release [Dry] on an approved home plan developed by Dauphin County Management Unit." Order, 9/12/2016.[4]

When counsel files a petition to withdraw and accompanying **Anders** brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. **Commonwealth v. Bennett**, 124 A.3d 327, 330 (Pa. Super. 2015). Our review of the record reveals counsel has complied with the requirements for withdrawal outlined in **Anders**, **supra**, and its progeny. Notably, counsel completed the following: (1) she filed a petition for leave to withdraw, in which she states her belief that the appeal is frivolous; (2) she filed an **Anders** brief pursuant to the dictates of **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009); (3) she furnished a copy of the **Anders** brief to Dry; and (4) she advised Dry of his right to retain new counsel or proceed *pro se*. **See Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Moreover, we have received no correspondence from Dry supplementing the **Anders** brief.

Therefore, we proceed "to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Commonwealth v. Flowers**, 113 A.3d 1246, 1248 (Pa.

---

[4] At the conclusion of the July 25, 2016, revocation hearing, the trial court had indicated its willingness to transfer Dry to an inpatient treatment facility. **See** N.T., 7/25/2016, at 6.

Super. 2015) (quotations and citation omitted). In so doing, we review not only the issues identified by appointed counsel in the **Anders** brief, but examine all of the proceedings to "make certain that appointed counsel has not overlooked the existence of potentially non-frivolous issues." **Id.** at 1249 (footnote omitted).

The sole claim identified in counsel's **Anders** brief asserts the evidence of Dry's technical violations presented at the revocation hearing was insufficient to support the court's revocation of his probation at Docket No. 4993-2015, and parole at Docket No. 1698-2011. **See Anders** Brief at 9. The decision whether to revoke a defendant's probation and parole is within the sound discretion of the trial court. **Commonwealth v. Colon**, 102 A.3d 1033, 1041 (Pa. Super. 2014) (citation omitted), *appeal denied*, 109 A.3d 678 (Pa. 2015); **Commonwealth v. Kalichak**, 943 A.2d 285, 291 (Pa. Super. 2008). The Commonwealth has the burden to prove a violation by a preponderance of the evidence. **See Commonwealth v. Allshouse**, 33 A.3d 31, 37 (Pa. Super. 2011) (probation), *appeal denied*, 49 A.3d 441 (Pa. 2010); **Kalichak**, **supra** (parole).

Furthermore,

> "When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison.["] … "[T]he reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated[.]" "A probation violation is

established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct."

*Colon*, *supra*, 102 A.3d at 1041 (internal citations omitted).

Similarly, when considering the evidence supporting a violation of parole, this Court has explained:  "This lighter burden of proof reflects the policy of a parole revocation hearing whereby the emphasis is whether parole is an effective tool to promote rehabilitation and deter 'future antisocial conduct.'"  *Commonwealth v. Gochenaur*, 480 A.2d 307, 309 (Pa. Super. 1984) (qutotation omitted).

Here, Dry argues the revocation of both his probation and parole was based solely on insufficient evidence of technical violations.  Although neither he nor his counsel explicitly contested the Commonwealth's evidence, counsel offered "an explanation for some of [Dry's] conduct," which, Dry asserts "would not rise to the level of a violation."  *Anders* Brief at 10.  Further, Dry stated at the revocation hearing:  "[A] lot of those things that were said didn't happen."  N.T., 7/25/2016, at 6.  Moreover, with regard to his "unaccountability on electronic monitoring," Dry asserts the probation officer testified that Dry was hospitalized during some of those periods.  *Anders* Brief at 11.  Accordingly, he maintains:  "It could be reasonably inferred that [Dry's] hospitalization made it impossible for him to comply with the condition to remain at his home address."  *Id.*

Our review of the testimony from the July 25, 2016, revocation hearing reveals ample support for the court's ruling.  Indeed, Dry's probation

officer testified that Dry violated the following conditions of his probation and parole: (1) refrain from "overt behavior;" (2) make payments toward fine/costs; (3) may not move or change address, (4) comply with treatment, and (5) abstain from use of drugs. N.T., 7/25/2016, at 3. The probation officer explained Dry was discharged from a drug and alcohol rehabilitation facility for "threatening staff and becoming uncooperative with staff." *Id.* He further stated Dry had "no payment history" with regard to his fines and costs, and, "did not have a valid address." *Id.* The probation officer testified that "[o]n his transport to Dauphin County Prison on May 26[th], 2016, [Dry] did admit to abusing his medications, opiates." *Id.* Lastly, the probation officer noted Dry had periods of "unaccountability" on electronic monitoring, although he acknowledged that during some of those times Dry was hospitalized or detained. *Id.* at 4.

Neither counsel nor Dry contested any of the technical violations presented by the probation officer. Counsel did note the dispute at the rehabilitation facility "started out" over a "kind of silly thing … that [Dry] did not handle well." *Id.* at 5. Further, he requested Dry be placed in an inpatient facility for mental health and medical issues. *Id.* Dry agreed with this request, but stated "[A] lot of those things that were said didn't happen." *Id.* at 6. He did not elaborate.

We conclude the testimony of Dry's probation officer, concerning the numerous technical violations of Dry's probation and parole, was sufficient to support the court's ruling. It is well-settled that "technical violations are

sufficient to trigger the revocation" of probation and parole. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). Here, Dry's actions established that both probation and parole have proven to be ineffective tools in promoting his rehabilitation and deterring his future antisocial conduct. **See Colon**, **supra**; **Gochenaur**, **supra**.

We agree with counsel's assessment that this claim is frivolous. Moreover, we have conducted "a full examination of the proceedings" and conclude that "the appeal is in fact wholly frivolous." **Commonwealth v. Flowers, supra,** 113 A.3d 1246, 1248.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2017