J-S02036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AMBER BROWN | : | |
| | : | |
| Appellant | : | No. 1627 EDA 2018 |

Appeal from the Judgment of Sentence April 30, 2018
In the Court of Common Pleas of Chester County
Criminal Division at No(s):  CP-15-CR-0003157-2017

BEFORE:  GANTMAN, P.J.E., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:                **FILED APRIL 16, 2019**

Appellant, Amber Brown, appeals from the judgment of sentence entered in the Chester County Court of Common Pleas, following her bench trial conviction for retail theft, a summary offense.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On May 27, 2017, Appellant entered a Kohl's department store in Exton, Pennsylvania with her daughter, M.B., and son, who were respectively thirteen years old and ten months old at the time.  Appellant left the store with several pieces of clothes without paying for them.  The Commonwealth subsequently charged Appellant with retail theft and receiving stolen property.  On March 1, 2018, Appellant proceeded to a bench trial, where the Commonwealth

---

[1] 18 Pa.C.S.A. § 3929(a)(1).

withdrew the charge of receiving stolen property. The court heard testimony from, *inter alia*, Kendall Riggins, a former Kohl's loss prevention supervisor, M.B., and Appellant.

Ms. Riggins testified on behalf of the Commonwealth and explained she had been a loss prevention supervisor at Kohl's since 2008 and was working in that capacity at the Kohl's in Exton, Pennsylvania on May 27, 2017. Through the store's CCTV surveillance system, Ms. Riggins saw Appellant enter the store with a shopping cart, accompanied by M.B and Appellant's ten-month-old child who was in a baby carrier covered with a blanket that sat atop the main compartment of Appellant's cart. An open baby/diaper bag sat in the front child seat of the cart. Ms. Riggins saw Appellant's purse inside the diaper bag.

Appellant initially caught Ms. Riggins' attention when Appellant handed something to M.B., who then left the store, went to the parking lot, and quickly returned. Ms. Riggins observed Appellant remove hangers from two Nike shirts in the athletic department and place the shirts in her cart. Appellant proceeded to the misses' department, where she quickly selected several items without checking the items' prices and placed the items on top of the diaper bag. Appellant then went to the juniors' department and intimates department, where she continued to select pieces of clothing quickly and place them in the cart. While Appellant shopped, Ms. Riggins made a list of the items Appellant placed in her cart. Ms. Riggins saw Appellant enter the first

stall in the intimates department fitting room with the cart, baby carrier, diaper bag, and her two children. Subsequently, M.B. left the stall and waited in the fitting room while Appellant remained inside the stall. Appellant was in the stall for approximately 28 minutes.

When Appellant exited the stall, she placed several hangers in the empty stall next to hers and left the fitting room. Ms. Riggins noticed Appellant was carrying an armful of clothes and the items in Appellant's cart had changed position; four articles of clothing, not the diaper bag, occupied the cart's front child seat and the baby carrier had shifted place. Appellant went to the misses' department fitting room recovery rack, where she left the clothes that had been on her arm. Appellant then placed a white Elle jacket among several others in the middle of the rack displaying that product on the sales floor.

Appellant proceeded to the check-out area, where she purchased four pieces of clothing with a Visa card in her name. At the same time, Ms. Riggins left the camera room, inspected the intimates department fitting room stalls which Appellant had entered. Ms. Riggins recovered empty hangers from the second stall, retrieved clothing she believed Appellant had placed on the misses' department recovery rack, and picked up the Elle jacket Appellant returned to the display rack. Once she had completed the transaction, Appellant exited the store.

Subsequently, Ms. Riggins discovered inside the pockets of the Elle jacket Appellant had returned to the display 16 tags. The tags corresponded

with 15 pieces of merchandise, specifically Ms. Riggins saw Appellant remove from the sales floor and take into the fitting room stall. Some of the tags appeared to have been cut off merchandise. Ms. Riggins did not later discover in the store the clothes corresponding with the 16 tags. The store's record of Appellant's transaction indicated Appellant had not paid for the merchandise the 16 displaced tags represented. The collective retail price of the missing items was $302.07.[2]

Ms. Riggins identified at trial a DVD containing a recording of the CCTV surveillance Ms. Riggins had viewed while Appellant was in the store on May 27, 2017. Ms. Riggins described in detail the events of Appellant's visit to Kohl's as depicted in the surveillance video. (**See** N.T. Trial, 3/1/18, at 9-68.)

Subsequently, M.B. testified on behalf of Appellant. M.B. explained she had packed the diaper bag before she and Appellant went to Kohl's on May 27, 2017. M.B. said the diaper bag was full before they entered the store. When M.B. was in the fitting room stall with Appellant, her baby brother was crawling on the floor of the stall, where there were hangers and tags. M.B.'s brother was tearing tags off clothes on the floor. When Appellant asked M.B. to clean up the stall, M.B. placed the tags into the pocket of a jacket or sweater. M.B. claimed Appellant did not know what M.B. had done with the

_____

[2] Despite the collective retail price of the stolen merchandise, the Commonwealth charged Appellant only with the theft of merchandise amounting to less than $150.00.

tags.  (*See id.* at 72-79).

Appellant also testified.  Appellant said she went to Kohl's with her son and daughter in May 2017, and identified herself and M.B. in the surveillance video.  Appellant explained when she entered the fitting room stall her purse sat on top of, but was not inside, the diaper bag.  Appellant testified there were clothes, hangers, and price tags on the stall floor, some of which Appellant acknowledged were from clothes she had brought into the stall. Appellant stated she placed her infant son on the floor for approximately twenty minutes while she tried on clothes.  While he was on the floor, Appellant's son ripped tags off clothes and put some tags in his mouth. Appellant said she did not see any danger of her son cutting himself with the items on the floor, but she did ask M.B. to clean up the stall floor to prevent the baby from putting tags in his mouth.  M.B. then left the fitting room stall, while Appellant changed her son's diaper.  Appellant testified that while she was in the store, she placed only her son's dirty diaper into the diaper bag.

Appellant claimed she did not see a recovery rack in the fitting room when she left the stall.  As a result, Appellant: (1) put empty hangers in the stall next to hers; and (2) took an armful of clothes she did not want to the recovery rack in a separate department's fitting room.  Appellant explained she had separated her purse from the diaper bag after she tried on clothes, because she planned to make a purchase.  Appellant stated she returned the Elle jacket to the sales floor, because she was considering whether to buy the

jacket in a different size and wanted to use the jacket she had tried on to find the same Elle jacket on the sales floor. Appellant explained she placed the Elle jacket she had tried on at the end of the display rack, where she had originally found it. Appellant testified the only merchandise she left Kohl's with were the four articles of clothing she had purchased. Appellant acknowledged the tags Ms. Riggins later found inside the Elle jacket Appellant returned to the sales floor were not ripped. (**See id.** at 80-108).

Immediately following trial, on March 1, 2018, the court convicted Appellant of one count of retail theft, a summary offense. The court sentenced Appellant on April 30, 2018, to three (3) days' to three (3) months' incarceration. On May 4, 2018, Appellant filed a timely post-sentence motion, which the court denied on May 7, 2018. Appellant filed a timely notice of appeal on May 18, 2018. The court ordered Appellant on May 24, 2018, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). In lieu of a concise statement, counsel filed a Rule 1925(c)(4) statement on September 19, 2018, of her intent to file an **Anders**[3] brief in this Court. On November 2, 2018, counsel filed in this Court a petition to withdraw as counsel and an **Anders** brief.

As a preliminary matter, counsel seeks to withdraw her representation pursuant to **Anders, supra** and **Commonwealth v. Santiago**, 602 Pa. 159,

_____

[3] **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006). **See also Commonwealth v. Dempster**, 187 A.3d 266 (Pa.Super. 2018) (*en banc*).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor [**Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.

\* \* \*

- 7 -

> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360.  Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-79, 978 A.2d at 361.

Instantly, Appellant's counsel has filed a petition to withdraw.  The petition states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous.  Counsel also supplied Appellant with a copy of the brief and a letter explaining Appellant's right to retain new counsel or to proceed *pro se* to raise any additional issues Appellant deems worthy of this Court's attention.  In the **Anders** brief, counsel provides a summary of the facts and procedural history of the case.  Counsel's argument refers to relevant law that might arguably support Appellant's issue.  Counsel further states the reasons for her conclusion that the appeal is wholly frivolous.  Therefore, counsel has substantially complied with the technical requirements of **Anders** and **Santiago**.

Appellant has not responded to the **Anders** brief *pro se* or with newly

- 8 -

retained private counsel. Counsel raises the following issue on Appellant's behalf:

> WAS SUFFICIENT EVIDENCE PRESENTED TO SUPPORT A CONVICTION BEYOND A REASONABLE DOUBT ON THE CHARGE OF RETAIL THEFT, [18] PA.C.S.A. § 3929?

(**Anders** Brief at 5).

Appellant argues the Commonwealth's evidence did not establish Appellant took the purportedly stolen merchandise from Kohl's. Appellant avers the Commonwealth failed to show Appellant intended to deprive Kohl's of the allegedly stolen merchandise without paying for it. Appellant concludes the Commonwealth presented insufficient circumstantial evidence to convict her of retail theft. We disagree.

With respect to a sufficiency claim:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free

to believe all, part or none of the evidence.

***Commonwealth v. Jones***, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

***Commonwealth v. Bullick***, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The Crimes Code defines the offense of retail theft in relevant part as follows:

> **§ 3929. Retail theft**
>
> **(a) Offense defined.—**A person is guilty of a retail theft if he:
>
>> (1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof;
>
> * * *

18 Pa.C.S.A. § 3929(a)(1).

Instantly, the trial court explained at length immediately following trial its findings of fact and rationale in convicting Appellant of retail theft. The trial court reasoned, in relevant part, as follows:

> Here is my findings of fact: [O]n May 27th, 2017, [Appellant] went into Kohl's in Exton, Pennsylvania, located in Chester County, with, I believe, her daughter was 13 at that time. … [A]nd…a ten-month-old son who was in the baby carrier. They entered the store in the Kohl's shopping cart. The diaper bag is in the child seat located in the front of the cart, and the baby carrier is in the top of the mesh back part of the cart. As soon as they enter the store, [Appellant] hands something to her daughter and she takes it back out to the car. … That attracted the attention of Kendall Riggins, the Kohl's loss prevention supervisor. M[s]. Riggins began

- 10 -

observing [Appellant]. She saw her proceed to the women's athletic department where [Appellant] took a [Nike] shirt off the hanger, placed it under the carrier of the mesh part of the shopping cart. She did the same thing with the second item. Then [she] went to the Misses' Department where she selected multiple items without ever looking at the price tags, just taking items. She then went to the Junior Department, did similar things selecting items. She then went to the Intimates Department, selected more items. Then…went into the fitting room in the Intimates Department. She went into the first stall at 1:43 with a shopping cart. The daughter was in the same [stall]. Her daughter eventually came out and sat down on the wall near the dressing room. [Appellant] was in the dressing room until 2:09, which means she was in there approximately 28 minutes. The diaper bag was no longer in the cart. The child seat was in this mesh part of the shopping cart. It could not be seen clearly. Also before the purse was sitting in the diaper bag open, now the purse is outside the bag, the Commonwealth's theory believing that things were stuffed in the diaper bag at that point. The baby carrier was also in a different position. [Appellant]'s purse which was originally in the diaper bag was now in the bag. When she left the dressing room, she had several items hanging over her arm. She went into the second stall instead of the stall she was in and placed the hangers in there, closed the door. Even though there was a recovery rack for one of the items right near the dressing room, she's in Intimates, she walks into the dressing room in the Misses' Department and returned unwanted items to the recovery rack there instead. She then went back to the Misses' Department with a white Elle jacket, back on the rack. She picked up another jacket from the same rack and placed that one back on the rack as well. She then went to the register and purchased four items. Ms. Riggins went to the Intimates dressing room and recovered the items left by [Appellant]. … She then went to the dressing room in the Misses' Department recovered the items left by [Appellant] there. She then went to the Misses' Department and recovered the jacket [Appellant] put back. In the pocket of the jacket, Ms. Riggins found 16 tags that had been taken off 16 separate items. One of them had two tags. I note for the record, …12 or 13 of them were solid tags that you would have little holes that you would have to have someone or a plastic attaching it to the

rest of the item and all of them are intact. A couple are stickers, but they're all intact. The tags correspond to the items [Appellant] had taken off the racks. And Ms. Riggins, very astutely, pointed out noticing this tag points to this particular item that we have a photo of and specifically going through it, identifying that there's a tag incidentally in the jacket that [Appellant] had in her hands that now belongs to an item that is now missing from the store. The items were not located after [Appellant] left the store. The total cost is over $300, but the Commonwealth is seeking $149 because they're treating this as a summary.

The Commonwealth introduced surveillance video that confirmed [Appellant]'s actions while in the Kohl's store. The court finds the testimony of Ms. Riggins very credible. …

Then you have [Appellant]'s daughter testify. She claimed her ten-month-old brother was crawling over the dressing room, acting crazy and ripped off the tags. None of these items are ripped off. None of the tags are ripped. They are all perfectly contained. She said her mother told her to clean up the tags. She gathered them up, put them in the Elle jacket. I find that testimony [in]credible. It's one of the saddest things I have seen in the 30 years I have been practicing law. [Appellant] had her daughter take the stand on her behalf and have her testify the way she did. … [Appellant], your testimony was so ridiculous, that any mother would say that I'm going to take my ten-month-old out of the thing, put them on the floor where there's tags and other stuff and let them walk around, have them put some of them in their mouth and eat them is just so abhorrently ridiculous. The crucial thing in this case is— what an amazing coincidence that the tags of the stolen items are all in the same jacket that you put back on the shelf that you didn't put in the recovery room right outside where you're at, that you walk all the way over to the other end of the store, didn't put them there. There's a hundred different things about your testimony that's incredible. You didn't put the hangers in the rooms you're in. You didn't go to the recovery room there. You went to the other side of room. The thing about watching the videotape is in openings, [trial counsel] said a frazzled mother. This wasn't a frazzled mother. This was a thief taking her time going

- 12 -

through the store. …

The circumstantial evidence clearly shows [Appellant] committed retail theft here. It's not a coincidence the white jacket that Ms. Riggins clearly identified is the one that contained the 16 tags with the 15 items missing. …

… [T]he Commonwealth proved its case beyond a reasonable doubt. I think the evidence is overwhelming. …

(N.T. Trial, 3/1/18, at 116-21). The record supports the court's rationale.

*See Jones, supra*. The Commonwealth presented sufficient evidence to establish Appellant took merchandise from Kohl's without paying and with the intent to deprive Kohl's of those items. *See* 18 Pa.C.S.A. § 3929(a)(1). Following our independent review of the record, we agree that the appeal is frivolous. *See Palm, supra*. Accordingly, we affirm and grant counsel's request to withdraw.

Judgment of sentence affirmed; petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/19