J-A28011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: L.Y.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 826 MDA 2021 |

Appeal from the Decree Entered April 29, 2021
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  13 AD 2021

| | | |
|---|---|---|
| IN THE INT. OF: B.M.R.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  M.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 827 MDA 2021 |

Appeal from the Decree Entered April 29, 2021
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  14 AD 2021

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 21, 2021**

M.R. (Mother) appeals[1] *nunc pro tunc* from the trial court's decrees

involuntarily terminating her parental rights to her children, L.Y.M. (born

---

[*] Former Justice specially assigned to the Superior Court.

[1] The appeals at 826 MDA 2021 and 827 MDA 2021 were consolidated *sua sponte* by our Court on July 15, 2021.  **See** Pa.R.A.P. 513; Pa.R.A.P. 2138.

10/05) and B.M.R.R. (born 11/14) (collectively, Children). Counsel has also filed an application seeking leave to withdraw on appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *In re Adoption of V.E.*, 611 A.2d 1267 (Pa. Super. 1992). Due to Mother's consistent failure to comply with court-ordered objectives in order to resolve the significant mental health issues that prevented her from capably parenting Children, we affirm. We also grant counsel's application to withdraw.

In December 2018, Dauphin County Social Services for Children and Youth (CYS) received a referral regarding concerns about Mother's mental health and her ability to care for her family. Although CYS offered Mother services to address the issue, she did not participate in any mental health treatment at the time. CYS closed the case in January 2019. Weeks later, CYS received another referral that Mother was being admitted to an inpatient mental health program and that no family members were able to care for Children. Following an emergency shelter care hearing on February 6, 2019, Children were taken into protective custody. On April 2, 2019, Children were adjudicated dependent and legal and physical custody was transferred to CYS. Children were placed in kinship foster care. A family service plan was established for Mother, requiring her to obtain a psychological evaluation and court-ordered signed releases. Mother visited a behavioral health center for the evaluation, but never had the evaluation conducted because she refused to sign the required consents. The court permitted Mother to have supervised visitation with Children at CYS.

The court held permanency hearings in September 2019, March 2020, June 2020, and November 2020. Mother continued to refuse to sign releases for her psychological evaluation and remained homeless. CYS had to change Children's placements 14 times due to Mother making threats to Children's foster parents and visiting their foster homes unannounced. Mother was arrested for receiving stolen property in October of 2019. In March 2020, the court ordered no in-person contact between Children and Mother; Children were ordered to remain in kinship care. Sibling visitations were permitted to continue.

On February 4, 2021, CYS filed petitions to involuntarily terminate Mother's parental rights to Children based upon 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b). On April 29, 2021, the court held a termination hearing,[2] at which Mother, CYS paralegal Ann Almoureux, CYS caseworker Kristin Brown, CYS caseworker Brittni Tallman, and CYS caseworker supervisor Aesha Wiggins testified. Ms. Almoureux testified that Mother would frequently send her "alarm[ing] and disturbing" emails using disparaging and offensive

---

[2] On March 2, 2021, the court appointed Sarah E. Hoffman, Esquire, as guardian *ad litem* (GAL) and legal counsel for Children. **See** 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and **In re K.R.**, 200 A.3d 969 (Pa. Super. 2018) (en banc), **but see In Re: T.S., E.S.**, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests."). Attorney Hoffman has not filed a brief on appeal, but concurs with Mother's counsel that the instant appeal is frivolous.

language, and accusing Ms. Almoureux and CYS caseworkers of lying to Children about Mother. N.T. Termination Hearing, 4/29/21, at 13-14. CYS intake caseworker Tallman testified that when she first became involved in the case, Mother told her that she was overwhelmed as a single mom who received very little parenting support. *Id.* at 21. Ms. Tallman discussed therapy programs with Mother to address her problems, but Mother told her that she was not interested in formal treatment. *Id.* In February 2019, Ms. Tallman testified that she had to request that Children be placed in emergency temporary custody due to concerns regarding Mother's mental health. *Id.* At that time Mother began an inpatient program and CYS placed Children in foster care. *Id.* at 23. Ms. Tallman also testified that Mother refused to sign any releases with regard to her court-ordered psychological evaluation. *Id.* at 27-28. Ms. Tallman testified that Mother arrived, unannounced, at her brother's house when he was caring for Children and refused to leave which "caus[ed] a lot of stress for [Mother's] family members and [C]hildren[.]" *Id.* at 28.[3] Finally, Ms. Tallman testified that Mother never completed a psychological evaluation while she was assigned to her case, that Mother failed to submit to all requested urine screens, and that Mother also did not submit proof of employment. *Id.* at 29-30.

---

[3] Ms. Tallman also testified that because of Mother's unannounced visits, CYS was not permitted to disclose Children's foster placement addresses to Mother. *Id.* at 28.

CYS supervisor Wiggins testified that she recalled during a supervised visit at CYS, Mother was "very angry," and was "yelling at [Ms.] Tallman" and the foster parent, which made Children "very upset" to the point they were "hysterical, crying" and "screaming." *Id.* at 40-43, 41 ("[There] was a lot of yelling, cursing, [and] crying with [Mother]."). Due to the tense situation, CYS security was called to intervene. *Id.* During the fray, Mother climbed into the foster parent's vehicle and had to be physically removed by agency staff. *Id.* at 42.[4] Ultimately, supervised visitation was moved from CYS to the YMCA to address concerns regarding Mother's volatile behavior. *Id.* at 44. At a September 2019 permanency hearing, another caseworker testified that Mother had threatened foster parents, arriving unannounced at the foster home. As a result of Mother's behavior, as stated above, CYS had to change Children's placements multiple times[5] throughout the life of the case. *Id.* at 51-52. At the March 2020 permanency review hearing, the court ordered no in-person contact between Mother and Children. *Id.* at 58.

Following the termination hearing, the court granted CYS' termination petitions and terminated Mother's rights to Children pursuant to sections

---

[4] Ms. Wiggins also testified that Mother, on more than one occasion, removed or attempted to remove another one of her children from the Milton Hershey School, where that child attends, in violation of school policy. *Id.* at 43-44. Mother was criminally charged with interference with custody. *Id.* at 45. Ultimately, that child was adjudicated dependent. *Id.* at 49.

[5] CYS changed L.M.'s placement eight times and B.R.'s placement six times.

2511(a)(1), (2), (5), (8) and (b) of the Adoption Act.[6]  Mother filed timely

notices[7] of appeal.[8]  On February 12, 2020, counsel filed a petition for leave

to withdraw with our Court, pursuant to **Anders**, **supra**, and **V.E.**, **supra**.  In

**V.E.**, our Court stated:

> Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition this court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal.  Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, the court holds that appointed counsel seeking to withdraw representation must submit an **Anders** brief.

---

[6] 23 Pa.C.S. §§ 2101-2938.

[7] Instantly, Mother has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), where she filed notices of appeal for each docket number and designated the relevant docket number on each notice by placing a check mark next the appropriate docket number to identify which notice corresponded with each appealed case.  **See Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (where defendant filed four notices of appeal and listed all four docket numbers on all four notices, defendant complied with **Walker** by italicizing one relevant docket number on each notice to identify which notice corresponded with each appealed case); **see also Commonwealth v. Larkin**, 235 A.3d 350 (Pa. Super. 2020) (applying holding in **Johnson** and reiterating that **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019), is expressly overruled so far as it mandates notice of appeal may only contain one docket number; fact that defendant placed both docket numbers on single notice of appeal "is of no consequence").

[8] In light of counsel's intent to file an **Anders** brief, counsel did not file a concise statement of errors complained of on appeal in compliance with Pa.R.A.P. 1925(c)(4).

*In re Adoption of V.E.*, 611 A.2d at 1275. Moreover, we held that "any motion to withdraw representation, submitted by appointed counsel, must be accompanied by an advocate's brief, and not the *amicus curiae* brief delineated in [*Commonwealth v.*]*McClendon*, [434 A.2d 1185 (Pa. 1981)]. *See also In re Adoption of R.I.*, 312 A.3d 601, 602 (Pa. 1973) ("the logic behind . . . an individual in a criminal case being entitled to representation by counsel at any proceeding that may lead to 'the deprivation of substantial rights'[,] . . . is equally applicable to a case involving an indigent parent faced with the loss of her child.").

In her **Anders** brief, counsel raises the following issue for our consideration, "[Did] the trial court abuse[] its discretion and commit[] an error of law when it terminated [Mother's] parental rights?" **Anders** Brief, at 4.

Before reaching the merits of Mother's appeal, we must first address counsel's application to withdraw. To withdraw under **Anders**, counsel must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [**Anders**] brief to the [appellant]; and (3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.[9]

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super.

_____

[9] Mother has not raised any additional arguments on appeal.

2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to [the] client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

An *Anders* brief must also comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 133 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Instantly, Mother's counsel filed an application with our Court, dated August 19, 2021, seeking leave to withdraw her appearance as court-appointed counsel in this appeal. Counsel also filed an *Anders* brief, in which she acknowledges that "after conscientiously reviewing the facts of record and thoroughly evaluating the applicable statutes and relevant case law," she has

determined that the appeal is wholly frivolous. ***See Anders*** Brief (***Anders***/***Santiago*** Analysis), 8/18/21, at 10. Counsel's brief includes a somewhat truncated summary of the history and facts of the case. ***Id.*** at 5-6. She raises the issue that "Mother contends that the trial court abused its discretion or committed an error of law when it involuntarily terminated her parental rights." ***Id.*** at 7. Counsel then cites to subsections (a) and (b) of section 2511 of the Adoption Act—"Grounds for Involuntary Termination," ***id.*** at 8, and the relevant standards and scope of review in termination cases. ***Id.*** at 9.

Counsel offers the following facts to support her conclusion that Mother's issue is wholly frivolous: (1) Children have been in foster care for two and a half years; (2) Children are bonded and working on issues with foster parents; (3) Mother did not follow any service plan objectives; (4) Mother failed to resolve her significant mental health issues, which led to Children being declared dependent and placed in foster care; (5) Mother has no home for Children; (6) Mother has no job to support Children's needs; and (7) Mother has not been able to progress to unsupervised visits due to "acting out and traumatizing [C]hildren at visits." ***Id.***

Counsel's brief includes a letter, dated August 18, 2021, sent to Mother indicating that counsel has carefully and thoroughly reviewed Mother's case and concluded that the appeal is frivolous. The letter also references that counsel is enclosing a copy of her application to withdraw, as well as a copy of her ***Anders*** brief filed with this Court. Finally, the letter advises Mother

that she has the right to pursue the appeal on her own, with another privately-retained attorney, and that Mother also may raise any additional issues *pro se*.  We find that counsel has substantially complied with the requirements of **Anders** and **Santiago**, and, thus, we may review the issue raised by counsel and also conduct our independent review of the record to determine whether Mother's appeal is, in fact, frivolous.  **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa. Super. 2007) (substantial compliance with **Anders** requirements sufficient).

Our standard of review in termination of parental rights cases is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

After careful review of the record, we find there is ample, competent evidence to support the trial court's factual findings.  **T.S.M.**, **supra**.  Moreover, the court's conclusions are not a result of an error of law or an abuse of discretion.  **Id.**

Instantly, Children were initially removed from Mother's care due to Mother's severe mental health issues and inability to meet Children's basic needs. At the termination hearing, a caseworker testified that Mother continually failed to comply with her service plan objectives, including not completing a psychiatric evaluation and signing releases, being without stable housing or homeless, and behaving in such an erratic and troublesome way that the court had to cease in-person contact between Mother and Children. As the trial court recognizes:

> [I]t's overwhelming that the best interests of these [C]hildren are that . . . [M]other's . . . rights should be terminated and that these [C]hildren should be given a chance for permanency. . . . The [c]ourt can[no]t wait and hold the lives of the [C]hildren in ab[ayence] until [M]other . . . gets [her] act[] together and becomes . . . the kind of parent that [would make her] able to safely and lovingly raise these [C]hildren[.]

N.T. Termination Hearing, 4/29/21, at 96. We agree.

Since the time that Children were adjudicated dependent and put in placement, over two years ago, Mother has consistently failed to comply with her plan objectives in order to be reunited with Children. Most notably, Mother's significant mental health problems—the reason why Children were removed from Mother's care—make her incapable of adequately and appropriately parenting Children. Because the record supports the conclusion that termination would best serve Children's needs and welfare, the court

properly terminated Mother's parental rights pursuant to section 2511(a)(8).[10]

**See Adoption of C.J.P.**, 114 A.3d 1046, 1054 (Pa. Super. 2015) ("A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.") (citation omitted).[11]

Finally, following our independent review of the certified record, we conclude that the appeal is frivolous and unsupported in law or in fact. Thus, we grant counsel's application to withdraw. **In re V.E.**, **supra**.

Decrees affirmed.[12] Application to withdraw granted.

_____

[10] **See** 23 Pa.C.S. § 2511(a)(8) ("The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.").

[11] An analysis of whether termination was proper under subsection 2511(b), which is part of the bifurcated termination process, also leads us to the same conclusion—an appeal of this issue would be frivolous. Mother has not had any in-person contact with Children since March 2020 and the record is devoid of any evidence that she and Children are bonded. Moreover, the stability that Children are experiencing with their current foster families, one of which is an adoptive resource, supports the fact that termination under subsection 2511(b) would serve Children's safety needs and intangibles such as love, comfort, security, and stability. **In re Adoption of C.D.R.**, 111 A.3d 1212 (Pa. Super. 2015).

[12] We can affirm the trial court's decision regarding the termination of parental rights with regard to any single subsection of section 2511(a). **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2021